The STATE of Ohio, Appellee,

v.

HOWARD, Appellant.

[Cite as *State v. Howard* (2001), 146 Ohio App.3d 335.]

Court of Appeals of Ohio,
Fifth District, Muskingum County.

No. CT2001–0015.

Decided Sept. 25, 2001.

*Robert Smith,* Muskingum County Assistant Prosecuting Attorney, for appellee.

*Cole J. Gerstner,* for appellant.

GWIN, Presiding Judge.

Appellant Ishmael F. Howard appeals a judgment of the Muskingum County Common Pleas Court convicting him of possession of marijuana and no operator's license:

### First Assignment of Error

"The trial court erred in denying the multi-branch motion to suppress all evidence seized, including, but not limited to the contraband and cash."

### Second Assignment of Error

"The conviction for possession of marijuana is legally insufficient as a matter of law and is against the manifest weight of the evidence."

### Third Assignment of Error

"The trial court erred in allowing evidence regarding the cash in the pocket of the appellant in that said evidence was inadmissible pursuant to Evidence Rule 404 and 403."

At approximately 11:30 p.m. on May 20, 2000, appellant was traveling west on Interstate 70, in route to Columbus. Appellant stopped at a Shell station to get some gasoline. Beside the Shell station was a parking lot, which separates the station from a McDonald's restaurant. Appellant bought $5 worth of gasoline and went inside the station to pay for the gasoline. He left his vehicle unattended in front of the gas pumps and went next door to McDonald's. He walked through the drive-thru window and ordered food.

During appellant's absence, Trooper Bruce MacLaine of the Ohio State Highway Patrol came to the station to get coffee. The attendant indicated that appellant had left his vehicle unattended in front of the gas pump and that the attendant was not sure where appellant went. The car was running. Trooper Bruce MacLaine took the license plate number, called his dispatcher, and asked for a check of the plate. He was informed by the dispatcher that the owner of the vehicle was Malachi Anthony and that there was a felony warrant out for his arrest.

At this point in time, the trooper observed an individual running towards the car, carrying a McDonald's bag. The individual, who the trooper later determined to be appellant, jumped into his car, and left the gas station after seeing the trooper. The trooper got into his patrol car and followed appellant east on U.S. 40. He activated his lights and stopped appellant's vehicle at an Elby's Restaurant. Before the trooper could exit his car, appellant jumped out of his car and came back to the rear bumper on the driver's side of the vehicle, preventing the trooper from approaching the car.

The trooper asked appellant whether he was Malachi Anthony. Appellant responded that he was not, but Malachi Anthony owned the car. The trooper asked whether appellant had any identification or a driver's license, and appellant responded that he had left his license in his wallet at home in Wheeling, West Virginia. Appellant could not produce any identification to demonstrate that he was not Malachi Anthony.

Trooper MacLaine came back to his patrol car, intending to ascertain appellant's identity. He noted that appellant's pants were bulging around the pockets and waist. Before placing him in the car, he patted him down. While patting appellant down, he noted large bulges in his pants pockets. Appellant said that the bulges were money, approximately $8,000 in cash. Appellant removed the money, and Trooper MacLaine finished patting him down. Appellant was then told to put the money back into his pockets. The trooper then had appellant take a seat in his patrol car. Trooper MacLaine ascertained that appellant had an Ohio identification card and no driving privileges in the state of Ohio. He further ascertained that appellant's driving privileges were suspended through the state of West Virginia.

As the trooper was writing a citation, appellant put his arm around the back of the car seat behind the trooper. The vehicle had bucket seats, and appellant positioned his body as though he was squaring off with the trooper. Several times, the trooper directed appellant to put his arm down.

Hearing on his radio that there was a felony warrant for the owner of the car, Trooper Leroy Bethel arrived on the scene as backup. He approached appellant's car and looked in it. He then returned to the cruiser and alerted MacLaine

that he observed drugs in the vehicle. Shining a flashlight into the car, the troopers noted a "bud" of marijuana sticking out of a paper bag, which was under a sweatshirt in the backseat. Appellant was then placed under arrest. The officers opened a suitcase in the trunk of the vehicle, which contained cocaine and drug paraphernalia.

Appellant was charged with possession of cocaine, possession of drug paraphernalia, possession of marijuana, no operator's license, and permitting drug abuse. The possession of cocaine and drug paraphernalia charges included a specification requesting forfeiture of the cash in appellant's possession. The case proceeded to jury trial in the Muskingum County Court of Common Pleas. The state entered a *nolle prosequi* on the forfeiture specifications, as forfeiture proceedings were being handled by the Federal Drug Enforcement Agency. Following jury trial, appellant was acquitted of possession of cocaine and drug paraphernalia. Appellant was found guilty by the jury on the three remaining charges. The court then entered a judgment of acquittal on the charge of permitting drug abuse. As to the conviction of possession of marijuana, appellant was placed on community control for a period of three years. On the conviction for no operator's license, appellant was sentenced to thirty days' incarceration to run consecutively with the sentence of community control.

I

Appellant argues that the court erred in denying his multi-branch motion to suppress all evidence seized, including the contraband and cash. Appellant specifically challenges the stop of the vehicle, the *Terry* patdown, the plain-view seizure of the marijuana, and the search of the luggage in the trunk of the car.

Appellant first argues that the officers' stop of the vehicle was not justified by a reasonable suspicion of criminal activity. Appellant argues that the officer witnessed no criminal behavior and that the physical description of Malachi Anthony given to the officer was that he was Caucasian, while appellant was African–American.

When an officer runs a check of a vehicle's license plate and learns that the owner's license is suspended, the officer may rationally infer that the owner of the vehicle is likely to be driving the vehicle, giving rise to a reasonable, articulable suspicion to justify the stop. *State v. McClain* (Dec. 8, 1997), Stark App. No. 1997CA00125, unreported. However, if the officer sees the driver and can tell that his or her physical description does not match the description given of the owner of the vehicle, the inference that the driver of the vehicle is its owner is no longer rational, and the officer may lack reasonable suspicion to stop

the vehicle. *State v. Cricks* (Oct. 2, 2000), Stark App. No. 2000CA00121, unreported, 2000 WL 1608798.

█ In the instant case, the dispatcher relayed only to the officer that the owner of the vehicle was Malachi Anthony and that there was a felony warrant out for his arrest. Before the trooper could obtain a physical description of Malachi Anthony, appellant jumped in his car and drove away, causing the officer to give chase. The officer did not learn that Malachi Anthony was Caucasian until after he had stopped the vehicle, and appellant had failed to produce identification. Based on the information possessed by the officer, he had a reasonable suspicion of criminal activity to justify stopping the vehicle.

█ Further, appellant had left the vehicle running and unattended at the gas pump at the Shell station. R.C. 4511.661 provides that a person driving a motor vehicle shall not permit it to stand unattended without first stopping the engine. Therefore, the officer witnessed appellant commit a traffic offense, providing further suspicion for the stop.

█ Appellant next argues that the patdown of appellant was not justified. Where an officer observes unusual conduct that leads him reasonably to conclude, in light of his experience, that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous, and where nothing in the initial state of his encounter abates his fear for his safety, he is entitled to protect himself by conducting a carefully limited patdown of the outer clothing of the suspect in an attempt to discover a weapon. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

█ In the instant case, appellant could not produce a driver's license or other identification by which to identify himself. Further, when stopped by the officer, he immediately jumped out of his vehicle and met the officer at the rear, rather than waiting for the officer to approach the vehicle. Appellant claimed that he was not Malachi Anthony, but he could not identify himself, and the officer knew that there was felony warrant out for Malachi Anthony's arrest. The officer witnessed bulges in appellant's pants. As the officer intended to place appellant in the cruiser in an effort to ascertain his identity, the frisk of appellant was justified in order to determine whether he had a weapon in his pants. When the officer felt the money in his pants, he asked appellant to remove the money, so he could feel if there was a weapon underneath. Appellant complied, claiming that he had $8,000 that he had won at the dog track in Wheeling. After frisking appellant without the money in his pockets, he allowed appellant to return the money to his pockets.

■ Appellant next contests the plain-view seizure of the marijuana in the vehicle. Appellant argues that it is not reasonable to believe that the trooper could see the marijuana stem, in the dark, in the back seat of the vehicle.

Trooper Bethel testified that as he approached the vehicle, he smelled raw marijuana. Upon shining a flashlight into the car, he could see a marijuana bud sticking out of a paper bag, partially hidden by sweatshirt. Trooper MacLaine testified that upon shining a flashlight into the vehicle, he saw a stem and bud of marijuana stem sticking out from underneath a sweatshirt. Based on this testimony, the court did not err in concluding that the marijuana was in plain view and therefore could be seized.

Finally, appellant argues that the court erred in failing to suppress the contraband seized from the trunk, as the officer did not testify as to a standardized policy or practice governing the opening of closed containers when conducting an inventory.

■ To satisfy the Fourth Amendment, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedures or established routine. *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, paragraph one of the syllabus. If during a valid inventory search of a lawfully impounded vehicle a law enforcement officer discovers a closed container, the container may be opened only as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. *Id.* at paragraph two of the syllabus.

■ In the instant case, the officer failed to testify as to the existence of a standardized policy or practice governing the opening of containers when conducting an inventory search. Therefore, the court erred in failing to suppress the contents of the suitcase in the trunk. However, as appellant was acquitted of the charges of possession of cocaine, possession of drug paraphernalia, and permitting drug abuse, the charges arising from the evidence seized from the suitcase, the court's improper ruling on the motion to suppress is rendered harmless. The record does not reflect that the evidence of the cocaine and drug paraphernalia so contaminated the jury's deliberations as to result in an improper verdict on the marijuana conviction. There was an abundance of other evidence to support the jury's verdict on the charge of possession of marijuana, as will be discussed in assignment of error two.

The first assignment of error is overruled.

## II

Appellant argues that the judgment convicting him of possession of marijuana is against the sufficiency and manifest weight of the evidence. He argues that he borrowed the car from Malachi Anthony, and the evidence does not support a finding that he knowingly possessed the marijuana located in the back seat of the car.

Sufficiency of the evidence means the legal standard applied to determine whether the case may go to a jury, or whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

Weight of the evidence concerns the inclination of the greater amount of credible evidence to support one side of the issue rather than the other. *Id.* at 387, 678 N.E.2d 541. In considering a claim that a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way. *Id.* The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. *Id.*

In the instant case, the evidence demonstrated that appellant purchased $5 worth of gasoline and left his vehicle unattended and running in front of the gas pumps, while he walked through the drive-thru window at the McDonald's next door. When stopped by the police officer, appellant jumped out of his car and came to the rear bumper, as if he did not want the officer to approach the car. Appellant had no identification on him and possessed over $10,000 in cash, which was located in his pants pockets. Approximately half of the money was in $20 bills. Approaching the vehicle, the officers immediately smelled raw marijuana. A marijuana bud was sticking out of a paper sack, which was partially covered by a sweatshirt. Appellant was the operator and sole occupant of the vehicle, and claimed to have traveled around 100 miles from his home of Wheeling, West Virginia. Based on all of this evidence, the jury could conclude that appellant was in possession of the marijuana.

The second assignment of error is overruled.

## III

Appellant argues that the court erred in admitting evidence of the $10,602 that appellant possessed when he was arrested. Appellant argues that admission of this evidence violated Evid.R. 403 and 404.

Although appellant filed a motion *in limine*, when Trooper MacLaine testified as to the money found on appellant's body, appellant failed to object. We therefore must find plain error in order to reverse.

Evid.R. 403(A) provides that evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. In the instant case, the evidence that appellant possessed a large sum of cash, mostly in $20 bills, was extremely probative to the issue of whether he knowingly possessed the marijuana in the vehicle. The court did not err in failing to exclude the evidence pursuant to Evid.R. 403.

Appellant also argues that the admission of the evidence violates Evid.R. 404, prohibiting evidence of other crimes, wrongs, or acts to prove the character of the defendant. Appellant argues that he had to bring forth evidence to show the whereabouts of his cash, and therefore was required to testify concerning his gambling. The evidence of cash in and of itself was not character evidence. The fact that appellant's explanation as to how he received the cash called his character into question does not render the evidence inadmissible.

The third assignment of error is overruled.

The judgment of the Muskingum County Common Pleas Court is affirmed.

*Judgment affirmed.*

WISE and BOGGINS, JJ., concur.