OPINION
{¶ 1} Defendant-appellant Anthony Fitts appeals his conviction and sentence entered by the Stark County Court of Common Pleas on four counts of theft, following a jury trial.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 3} On February 2, 2005, the Stark County Grand Jury indicted appellant on ten counts of Robbery, in violation of R.C.2911.02(A)(2), felonies of the second degree.
 {¶ 4} These charges arose from a string of armed robberies which occurred in Stark County between August and November, 2004.
 {¶ 5} Appellant entered pleas of not guilty to the charges at his arraignment.
 {¶ 6} On March 5, 2005, Appellant filed a motion to sever the charges which was denied by the trial court.
 {¶ 7} On March 7, 2005, the matter proceeded to jury trial.
 {¶ 8} At trial, the jury heard testimony from ATT Wireless employees Aaron Prude and James Contrucci, Maggiore's employee Dawn Marshall, Dollar General employee Harriet Weese, independent eyewitnesses Chris Maley and Casey Frame, Southgate BMV employees Pam Campbell and Camille Sims, and Shamica Harris, an acquaintance of Appellant's.
 {¶ 9} Aaron Prude testified that the man who robbed the ATT Wireless store on August 26, 2004, was African-American and was wearing a baseball cap and sunglasses. The man had a black handgun which he pointed at Prude, placed a plastic shopping bag on the counter and told Prude to "put all the money in the bag." Prude positively identified Appellant from a photo-array. James Contrucci also identified Appellant as looking like the robber.
 {¶ 10} Dawn Marshall testified that on September 8, 2004, a masked man came behind the counter at the Maggiore's where she was working. The man was wearing pantyhose over his face, a black baseball cap and a blue shirt with the letters "Fubu" on the front. He pointed a black handgun at her, ordered her to open the register and took the money from the register. The robbery was recorded on the store's video surveillance. The outside camera's taped the subject without his mask.
 {¶ 11} Harriet Weese testified that on October 3, 2004, she was working at Dollar General when and African-American man walked in, pointed a black handgun at her and told her to give him the money and place it in a plastic shopping bag. He was approximately 5'6" and had his face covered with black cloth. When he left the store, Weese ran to lock the door and she was able to see his entire face without the mask. Weese made a positive identification of Appellant from a photo lineup and during the trial.
 {¶ 12} Chris Maley and Casey Frame, who were outside of the store, also saw the unmasked robber. Maley and Frame both made a positive identification of Appellant from a photo lineup and during the trial.
 {¶ 13} Pam Campbell and Camille Sims testified that on October 8, 2004, they were working at the Southgate BMV when an African-American man with a stocking cap over his face came behind the counter, pointed a black handgun at them and ordered them the give him money from the registers and put it in a plastic shopping bag. He was described as being approximately 5'5" to 5'6" tall with a thin build. When he left the store, a customer followed him outside and got the license plate number from the vehicle he was driving.
 {¶ 14} The police discovered that the owner of the vehicle driven by the robber belonged to Barbara Harris. The police spoke to both Barbara Harris and her daughter Shamica Harris. Both women were shown various videos and still-photos from the armed robberies. After viewing the videos and photos, Shamica Harris brought police a blue shirt with the letters "Fubu" on it which matched the one worn by the robber.
 {¶ 15} Barbara Harris was subpoenaed to testify at trial but failed to appear. Shamica Harris, however, did testify and stated that she had known Appellant for approximately one years and that he had driven her mother's car. She further testified that Appellant confessed to her that he had committed the string of robberies including the robberies at Priceless Kids, ATT Wireless, Family Dollar, Dollar General, Maggiore's, Mr. Hero, Check into Cash and Southgate BMV. She testified that he was excited to read about his robberies in the newspaper and further bragged about the BMV robbery being his biggest "lick." Shamica Harris identified Appellant as being the man in the still-photos from the robberies.
 {¶ 16} Following the presentation of evidence and deliberations, the jury found appellant guilty of four of the ten counts of robbery. The trial court proceeded to sentencing and ordered appellant to serve four (4) consecutive eight years terms of imprisonment, with an aggregate sentence of thirty-two (32) years.
 {¶ 17} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 18} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 19} "II. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE WITHOUT COMPLYING WITH THE STATUTORY CRITERIA OR MAKING THE REQUISITE FINDINGS.
 {¶ 20} "III. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE SENTENCES WITHOUT COMPLYING WITH THE STATUTORY CRITERIA OR MAKING THE REQUISITE FINDINGS.
 {¶ 21} "IV. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO RE-OPEN THE CASE AFTER THE STATE AND THE APPELLANT HAD RESTED.
 {¶ 22} "V. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S MOTION TO SEVER."
 I. {¶ 23} In his first assignment of error, appellant raises sufficiency of the evidence and manifest weight claims.
 {¶ 24} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 25} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
 {¶ 26} Appellant was charged with ten counts of robbery. R.C. § 2911.02(A)(2), in violation of R.C. 2911.02(A)(2), which states:
 {¶ 27} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 28} "(1) * * *
 {¶ 29} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 {¶ 30} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 31} As stated above, the jury heard testimony from each of the victims, a couple of independent witnesses and the investigating officer. Most of the victims described the robber as being African-American, approximately 5'5" and thin. They all stated that the robber pointed a black handgun at them. In each of the instances, the robber was either wearing a mask or had concealed part of his face. In the cases of the robberies at Maggiore's, Dollar General, Southgate BMV and ATT Wireless, the testimony was that that robber brandished a black handgun and brought his own plastic shopping bag.
 {¶ 32} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Again, based upon the facts noted supra, we find there was sufficient, competent evidence to support appellant's conviction, and the same was not against the manifest weight or sufficiency of the evidence.
 {¶ 33} Appellant's first assignment of error is overruled.
 II., III. {¶ 34} In his second and third assignments of error, appellant challenges the trial court's imposition of maximum, consecutive sentences and asserts the trial court failed to make the requisite findings to support same. We disagree.
 {¶ 35} Pursuant to the enactment of Senate Bill 2 in 1996, an appellate court's review of an appeal from a felony sentence is set forth in R.C. § 2953.08. Specifically, R.C. § 2953.08(A) presently reads:
 {¶ 36} "(A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
 {¶ 37} "(1) The sentence consisted of or included the maximum prison term allowed for the offense by division (A) of section2929.14 of the Revised Code, the sentence was not imposed pursuant to division (D)(3)(b) of section 2929.14 of the Revised Code, the maximum prison term was not required for the offense pursuant to Chapter 2925. or any other provision of the Revised Code, and the court imposed the sentence under one of the following circumstances:
 {¶ 38} "(a) The sentence was imposed for only one offense.
 {¶ 39} "(b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree.
 {¶ 40} "(2) The sentence consisted of or included a prison term, the offense for which it was imposed is a felony of the fourth or fifth degree or is a felony drug offense that is a violation of a provision of Chapter 2925. of the Revised Code and that is specified as being subject to division (B) of section2929.13 of the Revised Code for purposes of sentencing, and the court did not specify at sentencing that it found one or more factors specified in divisions (B)(1)(a) to (i) of section2929.13 of the Revised Code to apply relative to the defendant. If the court specifies that it found one or more of those factors to apply relative to the defendant, the defendant is not entitled under this division to appeal as a matter of right the sentence imposed upon the offender.
 {¶ 41} "(3) The person was convicted of or pleaded guilty to a sexually violent offense, was adjudicated as being a sexually violent predator, and was sentenced pursuant to division (A)(3) of section 2971.03 of the Revised Code, if the minimum term of the indefinite term imposed pursuant to division (A)(3) of section 2971.03 of the Revised Code is the longest term available for the offense from among the range of terms listed in section2929.14 of the Revised Code. As used in this division, `sexually violent offense' and `sexually violent predator' have the same meanings as in section 2971.01 of the Revised Code.
 {¶ 42} "(4) The sentence is contrary to law.
 {¶ 43} "(5) The sentence consisted of an additional prison term of ten years imposed pursuant to division (D)(2)(b) of section 2929.14 of the Revised Code.
 {¶ 44} "(6) The sentence consisted of an additional prison term of ten years imposed pursuant to division (D)(3)(b) of section 2929.14 of the Revised Code."
 {¶ 45} Additionally, pursuant to State v. Comer,99 Ohio St.3d 463, 793 N.E.2d 473, 2003-Ohio-4165, and its progeny, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing when imposing consecutive or maximum sentences.
 {¶ 46} Pursuant to R.C. § 2929.14(C), a trial court may impose the maximum sentence under the following conditions:
 {¶ 47} "(C) * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 48} This statute is to be read in the disjunctive. See,State v. Comersford (June 3, 1999), Delaware App. No. 98CAA01004, unreported. Accordingly, a maximum sentence may be imposed if the trial court finds any of the above listed categories apply.
 {¶ 49} In State v. Redman, Stark App. No. 2002CA00097, 2003-Ohio-646, this Court held:
 {¶ 50} "While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. §2929.19(B)(2)(d): The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 51} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 52} Thus, a trial court has discretion to impose a maximum sentence if it determines one of the factors listed in R.C. §2929.14(C) exists, and it explains its reasons for imposing a maximum sentence as required by R.C. § 2929.19(B)(2)(d).
 {¶ 53} At the sentencing hearing, the trial court stated:
 {¶ 54} "* * * The Court find that these clearly are the worst form of the offenses." (T. at 472).
 {¶ 55} "* * * The Court finds that several of the more serious factors apply here. The victims were traumatized and it was very apparent from both their testimony and from visually watching the victims as they testified on the stand. This was part of a well organized group of criminal activity." (T. at 473).
 {¶ 56} "The Court finds, in looking at the recidivism factors here, that recidivism here is extremely likely. If I put you back out on the street, there will be more crime, no doubt in my mind. You've got a history of prior criminal convictions outside of this state, you have not responded favorably before to sanctions that were imposed against you, you've shown no remorse whatsoever to any of the victims in this particular matter.
 {¶ 57} "The longest term on any particular offense is reserved for those that commit the worst form of the offense or for offenders that pose the greatest likelihood of committing future crimes. And I find that you have done both of those, both you committed the worst form of the offense, repeated robberies. Poor people just trying to make a living working basically at minimum wage jobs, putting them in fear for their lives. And I also find that you pose the greatest likelihood of committing future crimes of which you were convicted and based on your prior convictions." (T. at 472-474).
 {¶ 58} Pursuant to R.C. § 2929.14(E)(4) a trial court may impose consecutive sentences under the following conditions:
 {¶ 59} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 60} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 61} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 62} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 63} In support of its imposition of consecutive sentences, the trial court stated at the sentencing hearing:
 {¶ 64} "The Court also, in looking at whether consecutive or concurrent terms should be imposed, finds that consecutive terms may be applied if it's necessary to protect the public or to punish the offender and if they're not disproportionate to the offense and to the harm caused. And if the harm was so great or unusual that a single term does not adequately reflect the seriousness of the conduct. And that is, in fact, the case here without any doubt. And also that the Defendant's criminal history shows that consecutive terms are needed to protect the public from his future life of crime." (T. at 474-475).
 {¶ 65} Based upon the foregoing, we find the trial court provided sufficient reasons for imposing maximum, consecutive sentences.
 {¶ 66} Appellant's second and third assignments of error are overruled.
 IV. {¶ 67} In his fourth assignment of error Appellant argues that the trial court erred in allowing the State to re-open its case after the State and Appellant had rested. We disagree.
 {¶ 68} Specifically, Appellant argues that the State should not have been allowed to call Shamica Harris to testify after it had rested its case.
 {¶ 69} When Shamica Harris did not appear to testify during the time in which the State presented its case, the State moved the trial court for a continuance. The trial court denied same but did allow the State to re-open its case when she appeared late.
 {¶ 70} The order of proceedings of trial is set forth in R.C. § 2945.10, which states:
 {¶ 71} "The trial of an issue upon an indictment or information shall proceed before the trial court or jury as follows:
 {¶ 72} "(A) Counsel for the state must first state the case for the prosecution, and may briefly state the evidence by which he expects to sustain it.
 {¶ 73} "(B) The defendant or his counsel must then state his defense, and may briefly state the evidence which he expects to offer in support of it.
 {¶ 74} "(C) The state must first produce its evidence and the defendant shall then produce his evidence.
 {¶ 75} "(D) The state will then be confined to rebutting evidence, but the court, for good reason, in furtherance of justice, may permit evidence to be offered by either side out of its order.
 {¶ 76} "(E) When the evidence is concluded, either party may request instructions to the jury on the points of law, which instructions shall be reduced to writing if either party requests it.
 {¶ 77} "(F) When the evidence is concluded, unless the case is submitted without argument, the counsel for the state shall commence, the defendant or his counsel follow, and the counsel for the state conclude the argument to the jury.
 {¶ 78} "(G) The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case.
 {¶ 79} "The court may deviate from the order of proceedings listed in this section."
 {¶ 80} It has been previously held that a determination of whether to permit the State to reopen its case after it has rested is within the sound discretion of the trial court. SeeCity of Columbus v. Grant (1981), 1 Ohio App.3d 96, State v.Grundstein (1943), 46 Ohio Law Abs. 175, State v. Blankenship
(September 21, 1994), Wayne App. No. 2815, unreported, at 3, andState v. Pertee (Nov. 22, 1995), Wayne County App. No. 95CA0033.
 {¶ 81} Appellant argues that, if the trial court had discretion to permit the State to reopen its case, it abused that discretion. To constitute an abuse of discretion, a trial court's decision must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 82} Upon review, we find that the trial court did not abuse its discretion by permitting the State to reopen its case.
 {¶ 83} We further find that Appellant was not prejudiced by the allowance of such testimony. On the counts on which Appellant was convicted, the victims of those robberies testified and identified Appellant. Shamica Harris' testimony that Appellant confessed to the crimes must not have been given much weight by the jury because they did not convict Appellant on all the counts included by her in such confession. Additionally, Shamica Harris' testimony allowed in evidence that she had two brothers who also knew Appellant and that were approximately the same height as Appellant, casting the possibility of doubt on identification.
 {¶ 84} Based on the foregoing, we do not find that the trial court abused its discretion in allowing the State to re-open its case to allow Shamica Harris to testify.
 {¶ 85} Appellant's fourth Assignment of Error is therefore overruled.
 V. {¶ 86} In his fifth assignment of error, Appellant argues that the trial court abused its discretion in not granting his motion to sever. We disagree.
 {¶ 87} It should first be noted that Appellant failed to raise or renew his motion to sever at trial. Thus, appellant has failed to properly preserve this issue for appeal. See State v.Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, at paragraph three of the syllabus; State v. Grubb (1986),28 Ohio St.3d 199, 503 N.E.2d 142, at paragraph two of the syllabus. Therefore, the standard of review is plain error. State v. Howard,146 Ohio App.3d 335, 343, 2001-Ohio-1379, 766 N.E.2d 179; See Crim.R. 52.
 {¶ 88} An alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus; State v.Stojetz, 84 Ohio St.3d 452, 455, 1999-Ohio-464, 705 N.E.2d 329;State v. Campbell, 90 Ohio St.3d 320, 342, 2000-Ohio-183, 738 N.E.2d 1178. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111, 559 N.E.2d 710. It is based on this standard of error that we review this assignment of error.
 {¶ 89} Crim.R. 8 permits the joinder of offenses in an indictment "* * * if the offenses * * * are of the same or similar character, * * *, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 90} Crim.R. 14 permits a trial court to sever properly joined offenses upon a showing that joint trial of the offenses will prejudice the defendant.
 {¶ 91} In State v. Schaim, 65 Ohio St.3d 51,600 N.E.2d 661, 1992-Ohio-31, the Ohio Supreme Court set forth a three part test we are to apply in determining whether the trial court erred in denying appellant's motion to sever. On appeal, in order to prevail on a claim that the trial court erred in denying a motion to sever, appellant has the burden of demonstrating the following three facts: (1) that his rights were prejudiced; (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial; and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. Id. at 59, 600 N.E.2d 661, citing State v. Torres
(1981), 66 Ohio St.2d 340, 421 N.E.2d 1288, syllabus.
 {¶ 92} In determining whether appellant was prejudiced by joinder of multiple offenses, we must determine (1) whether evidence of the other crimes would be admissible, even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. Id., citing State v. Hamblin
(1988), 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476, reversed on other grounds, (C.A.6 Ohio), 354 F.3d 482. "If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trial,' and a court need not inquire further." Id., citing Drew v. United States (C.A.D.C. 1964),331 F.2d 85, 90.
 {¶ 93} Additionally, we have reviewed the evidence in this case and conclude the joined offenses share significant common features sufficient to establish a modus operandi that identify appellant as the perpetrator. The victims' testimony established the offenses were part of a common scheme whereby Appellant concealed his face, carried a black handgun and brought a plastic shopping back to carry the money.
 {¶ 94} Additionally, each crime involved separate witnesses and separate evidence. The jury was instructed separately on each count and was told to consider each count separately in deliberations. The fact that the jury acquitted Appellant on six of the ten counts supports the fact that the jury did in fact do just that.
 {¶ 95} We conclude appellant was not prejudiced by the trial court's joinder of the indictments.
 {¶ 96} Upon review, this Court finds that the ten counts indicted in the instant case are parts of a common scheme or plan or part of a course of criminal conduct. Therefore, they were properly joined in the same indictment.
 {¶ 97} Appellant's fifth Assignment of Error is therefore overruled.
 {¶ 98} The judgment of the Stark County Court of Common Pleas is affirmed.
Boggins, J. and Farmer, J. concur.
Hoffman, P.J. concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.