(129 P.3d 114)

No. 94,881

STATE OF KANSAS, *Appellant*, v. JUDITH A. HAMIC, *Appellee*.

Opinion filed March 3, 2006.

*Ernest H. Richardson*, county attorney, and *Phill Kline*, attorney general, for appellant.

*Kathleen W. Rein*, of Stull & Rein, L.L.C., of Pratt, for appellee.

Before CAPLINGER, P.J., JOHNSON, J., and KNUDSON, S.J.

JOHNSON, J.: The State takes this interlocutory appeal from the prosecution of the drug case against Judith A. Hamic (Judith), specifically challenging the suppression of evidence. The district court found that the initial vehicle stop was unlawful. Finding that the totality of the circumstances provided the arresting officer with legally sufficient justification to effect an investigatory detention of the vehicle, we reverse and remand.

On January 20, 2005, while on early evening patrol in the City of Pratt, Officer Wayne Cline passed a green Jeep Cherokee, which he believed might belong to Jena Hamic-Deutsch. Hamic-Deutsch had been stopped twice in the preceding 2 months while driving a green Jeep Cherokee, once by Officer Cline on December 19, 2004, and once by fellow officer, Robert Walker, on November 17, 2004. On both occasions, Hamic-Deutsch was cited for driving on a suspended driver's license and having no current proof of insurance. During Officer Cline's previous stop, Hamic-Deutsch displayed an insurance card indicating an expiration date in October 2004. Officer Cline also knew that Hamic-Deutsch was wanted on an active arrest warrant for probation violation issued out of municipal court.

Officer Cline followed the Jeep and checked its license tag through dispatch, confirming that the vehicle was registered to Hamic-Deutsch and her husband or ex-husband, Michael Deutsch. Although the officer could not ascertain who was operating the Jeep, he then effected a traffic stop. He discovered that the vehicle was being driven by Judith Hamic, the mother of Hamic-Deutsch, and that Hamic-Deutsch was a passenger in the vehicle. Officer Cline was aware that Judith did not have a valid driver's license, and he detected a strong odor of alcohol emanating from the vehicle. Further investigation, which is not relevant to this opinion, resulted in the arrest of Hamic-Deutsch on the outstanding warrant and the arrest of Judith on charges of possession of marijuana,

possession of drug paraphernalia, obstruction of legal process, and no proof of insurance. Subsequently, Hamic-Deutsch was also charged with having possessed the drugs and paraphernalia.

Hamic-Deutsch's motion to suppress the evidence obtained as a result of the traffic stop was granted by a magistrate. On appeal by the State, the district court conducted a de novo evidentiary hearing on the suppression motion. Therefore, in this case, the parties stipulated that Judith's suppression motion would be submitted to the district court upon the transcript of Hamic-Deutsch's suppression hearing, upon Officer Cline's affidavit describing the circumstances leading to Judith's stop and eventual arrest, and upon a copy of Hamic-Deutsch's outstanding arrest warrant.

In its memorandum decision, the district court found that "Officer Cline made a traffic stop without having observed a traffic violation or having other public service or safety grounds for the stop." The court opined that "[t]he fact that the officer knew the vehicle did not have insurance in November and December of 2004 does not amount to reasonable suspicion that the vehicle did not have insurance on January 20, 2005." Therefore, the court found that "the lack of reasonable suspicion before the stop controls under the stipulated facts before the Court" and granted the suppression motion.

On appeal, the State presents two issues, the gist of which we perceive to be that Officer Cline had reasonable suspicion that the crimes of driving while suspended and operating a vehicle without proof of insurance were being committed in the Jeep, and that, separately, the outstanding warrant for Hamic-Deutsch's arrest justified an investigatory stop of the vehicle owned by the fugitive.

*STANDARD OF REVIEW*

As noted, the parties stipulated to the documents upon which the district court was to decide the suppression motion, and we are unable to perceive any material dispute as to the relevant facts contained within those documents. Therefore, our review of the suppression order is a question of law subject to unlimited review. See *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004).

## LEGAL PRINCIPLES

"The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures." *Ramirez*, 278 Kan. at 404. The stopping of a moving vehicle by law enforcement is always considered a seizure. *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 647, 70 P.3d 707 (2003).

However, our courts consider a moving vehicle seizure to be an investigatory detention, as originally defined by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Kansas has codified the parameters of a permissible *Terry* stop in K.S.A. 22-2402(1), which provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

To lawfully stop a moving vehicle under *Terry* and K.S.A. 22-2402(1), a law enforcement officer must " 'have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime.' " *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998) (quoting *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 [1985]). "Something more than an unparticularized suspicion or hunch must be articulated. *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989)." *DeMarco*, 263 Kan. at 735. However, reasonable suspicion is something less than the probable cause required for an arrest. *State v. Slater*, 267 Kan. 694, 697, 986 P.2d 1038 (1999) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 [1990]) (" '[r]easonable suspicion is a less demanding standard than probable cause' ").

Both reasonable suspicion and probable cause are dependent upon the " 'content of information possessed by police and its degree of reliability,' " and " '[b]oth factors—quantity and quality—are considered in the "totality of circumstances," ' " *i.e.*, one must evaluate the whole picture. *Slater*, 267 Kan. at 697 (quoting *Ala-*

*bama,* 496 U.S. at 330). Our Supreme Court has cautioned against "evaluating each suspicious factor in isolation and asking whether there was an innocent explanation for the activity." *Ramirez,* 278 Kan. at 406-07.

Thus, determining where a case fits onto the continuum from unparticularized hunch through reasonable suspicion to probable cause appears to involve more art than science. The analysis is not amenable to an easily applied mechanical test. *Cf. State v. Patten,* 280 Kan. 385, 122 P.3d 350 (2005) (adopting a mechanical elements test for multiplicity without regard to the factual scenario of the particular case in order to achieve ease of application and certainty). As stated by the United States Supreme Court, cited with approval in *Ramirez,* 278 Kan. at 407:

" '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' . . .

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle,* 540 U.S. 366, 370-71, 157 L. Ed. 2d 769, 124 S. Ct. 795 (2003) (quoting *Illinois v. Gates,* 462 U.S. 213, 231, 76 L. Ed. 2d 527, 103 S. Ct. 2317 [1983]).

Obviously, the same fluidity and imprecise quantification of percentages applies to the reasonable suspicion standard, as a lesser degree of probable cause. "Where one or two factors may cause a reasonable suspicion, a combination of several factors may create probable cause." *Ramirez,* 278 Kan. at 407.

*LAWFULNESS OF VEHICLE STOP*

We decline the State's invitation to consider whether Officer Cline's knowledge of Hamic-Deutsch's outstanding arrest warrant provided a separate and independent lawful reason to effect an investigatory detention of the Jeep. The outstanding warrant for Hamic-Deutsch's arrest merely provided an additional reasonable suspicion that she "has committed" a crime, supplementing the officer's belief that she was then committing another crime. Therefore, we will look at the outstanding warrant factor as a sub-part of our totality of the circumstances evaluation.

Prior to effecting the stop on January 20, 2005, the content, or quantity, of Officer Cline's information was: (1) approximately 2 months previously, on November 17, 2004, Hamic-Deutsch was driving a green Jeep Cherokee; (2) at that time, her driver's license was suspended; (3) at that time, she had no proof that the vehicle was covered with liability insurance; (4) approximately a month later, on December 19, 2004, Hamic-Deutsch was driving a green Jeep Cherokee; (5) at that time, her driver's license was still suspended; (6) at that time, she still did not have proof of current insurance, but rather displayed proof that her insurance coverage had lapsed in October 2004; (7) the municipal court had issued a warrant for Hamic-Deutsch's arrest because of a probation violation; and (8) Hamic-Deutsch was a registered coowner of the moving green Jeep Cherokee that Officer Cline was following. The content of the officer's information did not include a visual confirmation of who was actually operating the green Jeep Cherokee.

The officer's information was of the highest quality, *i.e.*, reliable. Knowledge of the prior two traffic stops was obtained either firsthand or from another police officer. See *State v. Campbell*, 24 Kan. App. 2d 553, 555, 948 P.2d 684, *rev. denied* 263 Kan. 887 (1997) (finding collective knowledge of police officers as to defendant's suspended driver's license to be reliable information). Further, the existence of an active arrest warrant is reliable information supporting the reasonable suspicion that the subject of the warrant has committed an offense justifying detention.

Although we are not to isolate the individual factors for the purpose of inquiring into possible innocent explanations, a discussion of those factors is necessary to put the totality of the circumstances in context. One cannot get the whole picture without assessing the legitimacy of the factors ostensibly relied upon by the detaining officer. Any of the officer's subjective reasons for the stop which do not pass the objective test of a reasonably cautious person must be excluded from or at least discounted in the totality of the circumstances analysis.

The district court opined that it was unreasonable for the officer to suspect that the Jeep was being operated without insurance on January 20, 2005, just because the officer knew that it was unin-

sured in November and December of 2004. We disagree, albeit not solely on a temporal basis. Hamic-Deutsch was caught driving in November 2004 with insurance that had expired the previous month. A month later, Hamic-Deutsch was again caught driving without having rectified the October 2004 expiration of her automobile liability insurance. The knowledge that Hamic-Deutsch had twice, in recent months, chosen to drive in violation of our mandatory automobile liability insurance laws created an objectively reasonable suspicion that she is a driving without proof of insurance recidivist. Further, one would surmise that most of us would suspect that multiple arrests for driving on a suspended driver's license and driving without proof of insurance would impair the culprit's ability to obtain affordable automobile liability insurance coverage.

The district court did not address the officer's knowledge of Hamic-Deutsch's outstanding arrest warrant or her multiple previous driving while suspended arrests. Perhaps the court did not think that information was relevant, given the officer's admission that he had not visually confirmed that Hamic-Deutsch was the driver of the green Jeep Cherokee. Nevertheless, that information is part of the totality of the circumstances.

Again, we decline to suggest any temporal bright lines on the question of whether knowledge that a driver had a suspended driver's license a month before creates an objectively reasonable suspicion that the driver's license is currently suspended. *Cf. Campbell*, 24 Kan. App. 2d. at 555 (information obtained within the week before the vehicle stop considered sufficiently reliable). Here, Officer Cline knew that Hamic-Deutsch had been cited for driving on a suspended license but had nevertheless continued to drive while suspended. He certainly was not required to ignore this individual's propensity to illegally operate a vehicle on a suspended license, even after having been arrested for the offense. Likewise, he was free to consider that driving while suspended convictions normally result in an extension of the violator's period of suspension. Thus, Officer Cline was objectively reasonable in suspecting that Hamic-Deutsch had not regained her driving privileges a month after her second driving while suspended arrest.

Judith contends that Officer Cline could not have reasonably suspected that a crime was being committed without knowing that Hamic-Deutsch was the Jeep's driver and could not have reasonably expected to serve the arrest warrant without confirming that Hamic-Deutsch was an occupant of the vehicle. She points to the fact that the officer's check with dispatch informed him that the Jeep was coowned by Michael Deutsch and contends that Officer Cline knew the coowners were in the process of divorcing. Apparently, Judith is suggesting that a reasonable person might suspect that Michael was in sole possession of the Jeep.

Kansas has no published case dealing directly with the question of whether a law enforcement officer is justified in suspecting that the registered owner of a vehicle is the driver of that vehicle. Other jurisdictions have opined that an officer may rationally infer that a vehicle owner who has a suspended driver's license is likely to be driving his or her owned vehicle, unless other evidence or circumstances put the officer on notice that the driver may not be the suspended owner. See, *e.g.*, *State v. Howard*, 146 Ohio App. 3d 335, 340-41, 766 N.E.2d 179 (2001); and *State v. Panko*, 101 Or. App. 6, 9, 788 P.2d 1026 (1990); see also *People v. Barnes*, 152 Ill. App. 3d 1004, 1006, 505 N.E.2d 427 (1987) (when a car owner is known to possess a suspended driver's license it is reasonable to infer that the owner is driving because the owner does the vast amount of driving); *State v. Mills*, 458 N.W. 2d 395, 397 (Iowa App. 1990) (reasonable to infer a vehicle is being driven by its owner absent evidence to the contrary).

Perhaps it is more a matter of common experience than a profound legal maxim to declare that a law enforcement officer is reasonable in suspecting that the registered owner of a vehicle is the driver of the owned vehicle, absent evidence to the contrary. One presumes that it is common for a reasonably cautious citizen to honk or wave at a moving vehicle that is owned by a friend without first having identified the vehicle's occupants, and in doing so, rationally expect that the friend will receive the greeting. Further, the caveat, that the owner-is-the-driver inference may lose its rationality where the officer possesses contrary information, is simply another way of saying that we must look at the whole picture.

Therefore, the rationality of any inferences to be drawn from an officer's knowledge that a registered owner of a vehicle has a suspended driver's license or that the registered owner is the subject of an arrest warrant must be viewed in conjunction with all of the other information available to the officer. Such knowledge is definitely a factor, but it will not always be determinative.

Here, all of the information that Officer Cline possessed when he stopped the Jeep rationally supported the inference that Hamic-Deutsch was either the driver or an occupant of the vehicle. The officer's knowledge that a divorcing husband was a coowner of the vehicle did not contradict, destroy, or even mitigate the inference. The officer personally knew that Hamic-Deutsch had been driving the Jeep on two separate occasions within the past 2 months, supporting a reasonable presumption that Hamic-Deutsch was the Jeep's principal operator.

Under the totality of the circumstances, the facts and circumstances within Officer Cline's knowledge were sufficient, both as to quantity and quality, to warrant a person of reasonable caution in the belief that a crime was being committed by the Jeep's driver or that a crime had been committed by a fugitive who was an occupant of the Jeep. Therefore, the initial vehicle stop was a valid investigatory detention, and the district court's ruling to the contrary is reversed. The matter is remanded for further proceedings.

Reversed and remanded.