NOT DESIGNATED FOR PUBLICATION

No. 117,632

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JANIE SHOWALTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; CHERYL I. ALLEN, judge. Opinion filed April 27, 2018.
Affirmed.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Natasha Esau*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: A police officer has reasonable suspicion to stop a vehicle if (1) the officer knows that the registered owner of the vehicle has a suspended license, and (2) the officer is unaware of any facts to suggest that the registered owner is not the driver of the vehicle. While running tags, Deputy John Hendricks found that a blue Chevrolet Camaro was registered to a woman with a suspended driver's license—Janie Showalter. Deputy Hendricks stopped the vehicle and discovered that Showalter was driving. Showalter was convicted of driving with a suspended license and without an ignition interlock device. Showalter filed a motion to suppress the evidence, arguing that Deputy Hendricks did not

1

have reasonable suspicion to stop her vehicle. The district court denied the motion. We find that unless an officer has reason to know that the registered owner of a vehicle is not driving it, the fact that a vehicle is registered to a person with a suspended license provides reasonable suspicion to support a stop. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Deputy John Hendricks was parked and running vehicle license tags and drivers licenses as cars passed by. He ran the tags for a blue Chevrolet Camaro and discovered that the vehicle was registered to Janie Showalter. There were no other registered owners for the car. Deputy Hendricks checked Showalter's driver's license number and found that her driver's license was suspended for chemical test failure. Deputy Hendricks did not recognize the Camaro as a vehicle that he had seen before. Although Deputy Hendricks could not see who was driving the vehicle and he did not observe any traffic infractions, he initiated a traffic stop. Showalter was driving, and she provided him with an identification card. Deputy Hendricks then discovered that her driver's license was restricted to driving with an ignition interlock device. There was no ignition interlock device in the Camaro.

Showalter stipulated to the fact that the State had sufficient evidence to prove that she was guilty of driving while suspended and in circumvention of ignition interlock device. But, she filed a motion to suppress evidence, arguing that Deputy Hendricks violated her Fourth Amendment rights when he stopped her vehicle. The district court denied Showalter's motion and she was convicted of both offenses.

ANALYSIS

Showalter argues that the district court erred when it denied her motion to suppress.

2

In reviewing the granting or denial of a motion to suppress evidence, this court determines whether the factual findings underlying the trial court's suppression decision are supported by a substantial competent evidence standard. The ultimate legal conclusions drawn from those factual findings are reviewed under a de novo standard. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Because the parties agree on the facts, this court can conduct unlimited review of Showalter's appeal.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides identical protection. *State v. Moore*, 283 Kan. 344, 349, 154 P.3d 1 (2007). A traffic stop is considered a seizure under the Fourth Amendment. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). To comply with the Fourth Amendment, an "officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). "It must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960).

"Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an unparticularized suspicion or hunch must be articulated. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." *State v. Toothman*, 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 (1999).

3

The reasonableness inquiry "balances the State's interests against an individual's right to be secure from unwarranted governmental intrusion." *State v. Glover*, 54 Kan. App. 2d 377, 379, 400 P.3d 182 (2017), *rev. granted* 306 Kan. 1323 (2017).

The issue in this case is determining whether Deputy Hendricks had reasonable suspicion to stop Showalter's vehicle based solely on the fact that Deputy Hendricks knew that Showalter, the registered owner of the vehicle, had a suspended license. This court addressed an identical issue in *Glover*. The *Glover* court held that an officer could stop a vehicle that was registered to a person with a suspended license. 54 Kan. App. 2d 377, Syl.

The *Glover* analysis began with a discussion of *State v. Hamic*, 35 Kan. App. 2d 202, 129 P.3d 114 (2006). In *Hamic*, Officer Wayne Cline saw a green Jeep Cherokee which he believed might belong to Jena Hamic-Deutsch. In the past two months, Hamic-Deutsch had been stopped twice in a green Jeep Cherokee, once by Officer Cline and once by a different officer. On both occasions she was driving with a suspended license and without proof of insurance. Officer Cline also knew that Hamic-Deutsch had an active warrant out for her arrest. Officer Cline ran the tag on the Jeep and confirmed that it was registered to Hamic-Deutsch and her husband. Although he did not confirm the identity of the Jeep's driver, he initiated a traffic stop. The vehicle was being operated by Hamic-Deutsch's mother and Hamic-Deutsch was a passenger in the car. Both were arrested for various charges. Hamic-Deutsch filed a motion to suppress evidence obtained as a result of the traffic stop.

The Court of Appeals held that Officer Cline had reasonable suspicion to stop the vehicle, even though Officer Cline did not have a visual confirmation that Hamic-Deutsch was in the vehicle. 35 Kan. App. 2d at 210. The court addressed "whether a law enforcement officer is justified in suspecting that the registered owner of a vehicle is the driver of that vehicle." 35 Kan. App. 2d at 209. While that was a question of first

4

impression, the court noted that "[o]ther jurisdictions have opined that an officer may rationally infer that a vehicle owner who has a suspended driver's license is likely to be driving his or her owned vehicle, unless other evidence or circumstances put the officer on notice that the driver may not be the suspended owner." 35 Kan. App. 2d at 209. The court stated:

"Perhaps it is more a matter of common experience than a profound legal maxim to declare that a law enforcement officer is reasonable in suspecting that the registered owner of a vehicle is the driver of the owned vehicle, absent evidence to the contrary. One presumes that it is common for a reasonably cautious citizen to honk or wave at a moving vehicle that is owned by a friend without first having identified the vehicle's occupants, and in doing so, rationally expect that the friend will receive the greeting. Further, the caveat, that the owner-is-the-driver inference may lose its rationality where the officer possesses contrary information, is simply another way of saying that we must look at the whole picture. Therefore, the rationality of any inferences to be drawn from an officer's knowledge that a registered owner of a vehicle has a suspended driver's license or that the registered owner is the subject of an arrest warrant must be viewed in conjunction with all of the other information available to the officer. Such knowledge is definitely a factor, but it will not always be determinative." 35 Kan. App. 2d at 209-10.

The *Glover* court relied on the *Hamic* analysis. But, it noted that while *Hamic* ultimately concluded under the facts of that case "that officers may reasonably infer the registered owner of a vehicle is the driver, it did not create a bright-line rule for the question presented here:  whether a law enforcement officer's knowledge that the vehicle owner's license is revoked *alone* provides reasonable suspicion to initiate a vehicle stop." *Glover*, 54 Kan. App. 2d at 381-82. The *Glover* court looked at cases from other jurisdictions that had addressed that specific issue. It found that "[s]tate supreme courts that have considered this issue have consistently held that an officer has reasonable suspicion to initiate a vehicle stop when" two factors are present:  "(1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is

5

unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle." 54 Kan. App. 2d at 382.

The state courts that have addressed this issue have cited a couple of public policy concerns in support of their holdings. The Supreme Court of Indiana noted that "[t]he safety of Indiana's roadways strongly points toward initiating a *Terry* stop when the police officer knows that the registered owner of a vehicle has a suspended license." *Armfield v. State*, 918 N.E.2d 316, 321 (Ind. 2009). The Supreme Court of Iowa addressed the difficulty in requiring law enforcement from visually verifying that the driver of the vehicle is the registered owner. *State v. Vance*, 790 N.W.2d 775, 782 (Iowa 2010). It held that such a standard would place "too heavy a burden on the police." 790 N.W.2d at 782. This is because "[i]t would be impossible for an officer to verify that a driver of a vehicle fits the description of the registered owner in heavy traffic, if the vehicle has darkly tinted windows, or if the stop occurs at night." 790 N.W.2d at 782; see also *State v. Edmonds*, 192 Vt. 400, 404, 58 A.3d 961 (2012) ("The court was . . . correct in its assessment that the additional information confirming driver identification advocated by defendants as a precondition to being stopped was, essentially, a standard of probable cause beyond the less demanding 'reasonable and articulable' suspicion necessary for an investigative stop.").

The reasoning of *Glover* and other state courts is persuasive. There are three primary reasons for allowing a police officer to reasonably infer that the registered owner of a vehicle is the driver. First is the common-sense presumption that the registered owner of a vehicle will drive it. Second is the impracticality of requiring officers to obtain visual confirmation of the driver. Third is a public policy in favor of road safety.

Showalter asks this court to reverse its position in *Glover*. She cites *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985), for its statement that the Fourth Amendment "requires an officer to have a reasonable suspicion, based on objective facts,

6

that the *individual* is involved in criminal activity." (Emphasis added.) She also cites *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981), for its statement that "detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Showalter then argues that Deputy Hendricks' actions violated the Fourth Amendment because he had no information that Showalter was the individual operating the vehicle. She asserts that "[r]easonable suspicion that the registered owner of a vehicle is suspended does not create a reasonable suspicion that the driver of that vehicle is suspended, when an officer has no information about the driver."

Showalter's argument is not persuasive, and the Supreme Court case she cites contradicts her argument. In *Cortez*, border patrol agents found footprints in the desert near the Mexican border following a fairly well-defined path to milepost 122 of an isolated part of Highway 86. After further observation and investigation, the officers deduced that a person was guiding undocumented immigrants to a pickup point, usually on weekends with clear nights. The officers dubbed this person "Chevron" based on a distinctive marking in the guide's footprints. 449 U.S. at 413. Guessing that the group would leave at sundown, the officers thought they would arrive at the highway sometime between 2 a.m. and 6 a.m. They surmised that the pickup vehicle would drive back to its origin point after picking up the group. On a clear weekend night, two officers parked their patrol car at an elevated point 27 miles away from milepost 122. They estimated it would be a one and a half hour round trip from their location to milepost 122. The officers looked for vehicles large enough to hold several people that passed them from the east and, after about one and a half hours, returned east. One truck passed them heading east at 4:30 a.m. and then returned almost exactly one and a half hours later. The officers stopped the car and discovered six undocumented immigrants inside. The soles of the driver's shoes matched the footprints observed in the desert. The driver and passenger sought to suppress the evidence obtained by the officers as a result of stopping their vehicle.

7

The Supreme Court did make the statement upon which Showalter relies, that officers must have reasonable suspicion that a "particular person" has committed a crime. 449 U.S. at 417-18. However, the Court also stated:

> "[T]he test is not whether [the officers] had probable cause to conclude that the vehicle they stopped would contain 'Chevron' and a group of illegal aliens. Rather the question is whether, based upon the whole picture, they, as experienced Border Patrol officers, could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity." 449 U.S. at 421-22.

The officers in *Cortez* did not know that the vehicle belonged to "Chevron." They only knew that the vehicle was likely engaged in criminal activity. Showalter cited this case out of context. The Kansas Supreme Court has likewise stated that officers merely need to suspect that a "vehicle contains individuals involved in criminal activity." *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

We note that the Kansas Supreme Court granted a petition for review in *Glover*. But we see no reason today for this court to reverse its position in *Glover*. Because Deputy Hendricks knew that the blue Chevrolet Camaro was registered to a person with a suspended license and there was nothing to indicate that Showalter was not the driver, the stop does not violate the Fourth Amendment.

Affirmed.