No. 116,446

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHARLES GLOVER,
*Appellee*.

SYLLABUS BY THE COURT

A law enforcement officer has reasonable suspicion to initiate a stop of a vehicle to investigate whether the driver has a valid driver's license if, when viewed in conjunction with all of the other information available to the officer at the time of the stop, the officer knows the registered owner of the vehicle has a suspended license and the officer is unaware of any other evidence or circumstances from which an inference could be drawn that the registered owner is not the driver of the vehicle.

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed June 30, 2017. Reversed and remanded with directions.

*John Grobmyer*, legal intern, *Andrew Bauch* and *Kate Duncan Butler*, assistant district attorneys, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Elbridge Griffy IV*, of Lawrence, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

STANDRIDGE, J.: The State takes this interlocutory appeal challenging the suppression of evidence obtained after a law enforcement stop of Charles Glover's

1

vehicle. The district court found that the initial stop was unlawful because it was not supported by reasonable suspicion. The State contends the district court erred in finding a lack of reasonable suspicion because the officer obtained a report that the registered owner of Glover's vehicle had a suspended driver's license and the officer reasonably inferred that Glover, the owner of the vehicle, was driving. Based on the particular facts presented in this case, we find the law enforcement officer had reasonable suspicion to initiate a stop of a vehicle to investigate whether Glover had a valid driver's license: the evidence established that the officer knew the registered owner of Glover's vehicle had a suspended driver's license and there was no evidence from which the officer could have inferred that anyone but the registered owner was the driver of the vehicle.

FACTS

The parties stipulated to the facts of this case. On April 28, 2016, Douglas County Deputy Mark Mehrer was on routine patrol when he observed a 1995 Chevrolet 1500 pickup truck. Mehrer ran the truck's license plate number through the Kansas Department of Revenue's file service, which confirmed that the plate was registered to the truck and indicated that the truck was registered to Glover. The report also stated that Glover had a revoked Kansas driver's license. Although Mehrer did not observe the driver of the truck commit any traffic infractions, Mehrer initiated a traffic stop based solely on the information that the driver's license of the truck's registered owner was revoked. Mehrer identified Glover as the driver of the truck. Glover was charged with driving without a license as a habitual violator under K.S.A. 2016 Supp. 8-287, which is a class A nonperson misdemeanor.

Glover filed a motion to suppress the evidence obtained as a result of the traffic stop, arguing that Deputy Mehrer initiated the stop without the necessary reasonable suspicion to believe a crime had been, was being, or was going to be committed. Specifically, Glover argued the existence of evidence to show that the registered owner of

2

a vehicle has a suspended driver's license is insufficient, without more, to support a reasonable inference that the owner of the vehicle is the person driving the vehicle. The State filed a response in opposition to the motion to suppress, arguing that Mehrer had a reasonable suspicion that Glover was the driver of the truck because it was reasonable for the officer to infer that the registered owner of a vehicle was also the driver of the vehicle in this case because there was no evidence from which a contrary inference could be made. The district court ultimately granted Glover's motion to suppress, holding that the officer did not have reasonable suspicion to initiate the stop. The court reasoned:

> "I mean, just as a personal observation, I have three cars registered in my name. My husband drives one every day; my daughter's in [Washington, D.C.] with one every day, and I drive the other. And I think that's true for a lot of families that if there are multiple family members and multiple vehicles, that somebody other than the registered owner often is driving that vehicle."

The State timely filed an interlocutory appeal seeking review of the district court's decision on the motion to suppress.

STANDARD OF REVIEW

On appeal of a district court's ruling on a motion to suppress, the ultimate determination of suppression is a question of law over which this court has unlimited review where, as here, the parties have stipulated to the material facts. See *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). "Whether reasonable suspicion exists is a question of law and is reviewed de novo." *State v. Coleman*, 292 Kan. 813, Syl. ¶ 4, 257 P.3d 320 (2011).

3

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable government searches and seizures. A seizure occurs when an officer has restrained the liberty of a person by means of physical force or show of authority. *State v. Greever*, 286 Kan. 124, 135, 183 P.3d 788 (2008) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). A law enforcement officer who stops a vehicle on a public roadway has effected a seizure. *State v. Marx*, 289 Kan. 657, 661, 215 P.3d 601 (2009).

To comply with the Fourth Amendment, a law enforcement officer conducting a vehicle stop must "know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014); see K.S.A. 22-2402(1) (codifying requirement that law enforcement officer may stop any person in a public place whom the officer reasonably suspects "is committing, has committed or is about to commit a crime"). The inquiry into the reasonableness of searches and seizures balances the State's interests against an individual's right to be secure from unwarranted governmental intrusion. *Terry*, 392 U.S. at 20-21. The reasonableness of an officer's suspicion depends on the totality of circumstances in the view of a trained law enforcement officer. *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013).

> "Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an unparticularized suspicion or hunch must be articulated. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that

4

must be taken into account when evaluating whether there is reasonable suspicion." *State v. Toothman*, 267 Kan. 412, Syl. ¶ 5, 985 P.2d 701 (1999).

The appellate court is "called upon to employ common sense and ordinary human experience" in evaluating whether the circumstances justify the detention. *Jones*, 300 Kan. at 647. "'[R]easonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence."'" *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). The burden is on the State to demonstrate the lawfulness of the stop. See K.S.A. 22-3216(2).

ANALYSIS

The question presented on appeal is whether Deputy Mehrer had reasonable suspicion to initiate a stop of Glover's vehicle to investigate whether the driver had a valid driver's license based solely on the fact that Mehrer knew that Glover, the registered owner of the observed vehicle, had a suspended license.

In support of its argument that Mehrer had reasonable suspicion, the State relies on *State v. Hamic*, 35 Kan. App. 2d 202, 129 P.3d 114 (2006), for guidance. In *Hamic*, an officer observed a green Jeep Cherokee, which he believed was owned by Jena Hamic-Deutsch. The officer had personal knowledge of two previous instances in which Hamic-Deutsch operated the Jeep with a suspended license and without proof that the vehicle was covered with liability insurance: once approximately 2 months before the stop, and once approximately 1 month later. The officer also knew that a warrant had been issued for Hamic-Deutsch's arrest for a probation violation and that Hamic-Deutsch was a registered coowner of the Jeep. The officer did not observe a traffic violation and did not visually confirm that Hamic-Deutsch was operating or occupying the Jeep. Upon stopping the vehicle, the officer learned that the driver was Hamic-Deutsch's mother and

5

that Hamic-Deutsch was an occupant. After investigation, the officer arrested both women on several charges. The defendants moved to suppress the evidence obtained as a result of the traffic stop.

The *Hamic* court analyzed the totality of the information known to the officer at the time of the vehicle stop and ultimately determined that it supported a reasonable inference that Hamic-Deutsch was either the driver or occupant of the vehicle. 35 Kan. App. 2d at 210 ("The officer personally knew that Hamic-Deutsch had been driving the Jeep on two separate occasions within the past 2 months, supporting a reasonable presumption that Hamic-Deutsch was the Jeep's principal operator."). On the issue of whether a law enforcement officer is justified in suspecting that the registered owner of a vehicle is the driver of that vehicle, the court stated as follows:

> "Perhaps it is more a matter of common experience than a profound legal maxim to declare that a law enforcement officer is reasonable in suspecting that the registered owner of a vehicle is the driver of the owned vehicle, absent evidence to the contrary. One presumes that it is common for a reasonably cautious citizen to honk or wave at a moving vehicle that is owned by a friend without first having identified the vehicle's occupants, and in doing so, rationally expect that the friend will receive the greeting. Further, the caveat, that the owner-is-the-driver inference may lose its rationality where the officer possesses contrary information, is simply another way of saying that we must look at the whole picture." 35 Kan. App. 2d at 209.

The court specifically noted that any inference drawn from the fact that the registered owner of a vehicle is the driver of the owned vehicle "must be viewed in conjunction with all of the other information available to the officer" and that "it will not always be determinative." 35 Kan. App. 2d at 210. As such, the court used the officer's inference as one point in its analysis of the totality of the circumstances to determine that the officer had reasonable suspicion to initiate a vehicle stop. So while the court in *Hamic* ultimately concluded under the facts presented that officers may reasonably infer the

6

registered owner of a vehicle is the driver, it did not create a bright-line rule for the question presented here: whether a law enforcement officer's knowledge that the vehicle owner's license is revoked *alone* provides reasonable suspicion to initiate a vehicle stop.

Although Kansas courts have not yet confronted this narrow issue, courts in other jurisdictions have provided helpful guidance. State supreme courts that have considered this issue have consistently held that an officer has reasonable suspicion to initiate a vehicle stop when (1) the officer knows that the registered owner of a vehicle has a suspended license and (2) the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle. See *Armfield v. State*, 918 N.E.2d 316, 321-22 (Ind. 2009) ("[A]n officer has reasonable suspicion to initiate a *Terry* stop when [1] the officer knows that the registered owner of a vehicle has a suspended license and [2] the officer is unaware of any evidence or circumstances which indicate that the owner is not the driver of the vehicle."); *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010) ("[A]n officer has reasonable suspicion to initiate an investigatory stop of a vehicle to investigate whether the driver has a valid driver's license when the officer knows the registered owner of the vehicle has a suspended license, and the officer is unaware of any evidence or circumstances indicating the registered owner is not the driver of the vehicle."); *State v. Tozier*, 905 A.2d 836, 839 (Maine 2006) ("[I]t is reasonable for an officer to suspect that the owner is driving the vehicle, absent other circumstances that demonstrate the owner is not driving."); *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996) ("[T]he knowledge that the owner of a vehicle has a revoked license is enough to form the basis of a 'reasonable suspicion of criminal activity' when an officer observes the vehicle being driven."); *State v. Neil*, 350 Mont. 268, 271, 207 P.3d 296 (2009) ("'[A]n officer may rationally infer the driver of a vehicle is the vehicle's registered owner unless the officer is aware of any facts that would render that inference unreasonable.'"); *State v. Richter*, 145 N.H. 640, 641-42, 765 A.2d 687 (2000) ("It was reasonable for the officer to infer that the driver was the owner of the vehicle. . . . Such an inference gave rise to a reasonable suspicion that the driver was committing a violation of [the law]."); *State v.*

*Edmonds*, 192 Vt. 400, 404, 58 A.3d 961 (2012) ("[R]easonable suspicion lay in the troopers' knowledge that the owner of [the] car was under license suspension, and the reasonable inference that the driver of a car could be its owner.").

Some state courts that have adopted the rule have relied on policy reasons to support their conclusion that the inference is reasonable. For example, the Indiana Supreme Court reasoned that requiring law enforcement to verify the driver of the car matches a physical description of the owner would strike "'against basic principles of safety [because it] puts the onus on the officer to maneuver himself [or herself] into a position to clearly observe the driver in the midst of traffic.'" *Armfield*, 918 N.E.2d at 322. Similarly, courts have found requiring the police to verify the driver's identity as the owner would be impractical in some cases, such as in heavy traffic, at night, or where the vehicle has dark-tinted windows. See *Vance*, 790 N.W.2d at 782; *Armfield*, 918 N.E.2d at 322. The *Vance* court concluded that "to forbid the police from relying on [an inference that the owner of the vehicle is the driver] to form reasonable suspicion for an investigatory stop would seriously limit an officer's ability to investigate suspension violations because there are few, if any, additional steps the officer can utilize to establish the driver of a vehicle is its registered owner." 790 N.W.2d at 782.

In response to the public policy concerns set forth by other state courts as noted above, Glover contends in his brief that Deputy Mehrer could have investigated the identity of the vehicle's driver further before initiating a vehicle stop:  Mehrer "could have obtained a description of the owner of the vehicle and compared the description with the driver," or he "could have found out whether the owner of the vehicle had prior convictions for driving while suspended[,] which would have offered additional justification for the stop." Like the Vermont Supreme Court held in response to a similar contention, we find requiring the officer to gather the additional evidence set forth by Glover to confirm driver identification prior to a vehicle stop essentially raises the evidentiary standard from one of reasonable suspicion to the more demanding standard of

probable cause. See *Edmonds*, 192 Vt. at 404. Our courts have held that reasonable suspicion requires only a "'minimum level of objective justification'" that is "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Pianalto*, 301 Kan. at 1011.

Raising his own public policy concerns, Glover contends that allowing law enforcement to stop any vehicle when the officer has knowledge that the owner's license is suspended would give the State an unwarranted right to stop persons who are not breaking the law, such as co-owners of the vehicle or persons who are driving the owner's vehicle to assist the owner with transportation. Glover also contends that driving with a suspended license does not harm the safety of the public, so "[t]he need to stop motorists who might be driving on a suspended license is not so urgent as to grant the [S]tate's request for a bright line rule." And Glover argues that such a rule is susceptible to being applied in a racially disparate manner, citing an ACLU of Illinois report detailing data that the Chicago Police Department utilized stop and frisk disproportionately in the black communities of Chicago. But Glover's concerns that police may initiate seizures of persons other than the vehicle's owner should be alleviated by the fact that the reasonable suspicion inquiry considers the totality of the circumstances. *Martinez*, 296 Kan. at 487. If an officer is aware of any information suggesting that the inference is not valid in a particular case, for example that the vehicle's driver appears to be much older, much younger, or of a different gender or race than the vehicle's registered owner, reasonable suspicion would dissipate.

Finally, Glover cites several out-of-state intermediate appellate court decisions that support the requirement that police officers conduct additional investigations to confirm a vehicle owner's identity prior to conducting a vehicle stop. See, *e.g.*, *State v. Cerino*, 141 Idaho 736, 738, 117 P.3d 876 (2005) ("Officers could run owner registration and driver's license checks for any vehicle they see in operation, seeking an owner without [a] license and a driver of the same gender, and would be authorized to stop any

vehicle meeting these criteria. In our judgment, the Fourth Amendment safeguard requires more particularized suspicion to justify the 'constitutionally cognizable intrusion' of stopping a motorist."); *State v. Parks*, 288 N.J. Super. 407, 412, 672 A.2d 742 (1996) ("When there is additional evidence of defendant's identity as the driver of his vehicle at a particular time, it may be inferred that the owner was the driver."); *Worley v. Commonwealth*, No. 1913-94-2, 1996 WL 31949, at *1 (Va. Ct. App. 1996) (unpublished opinion) ("Nonetheless, to hold that a police officer has a reasonable suspicion to conduct a *Terry* stop where the officer has determined only that the vehicle's owner has a suspended operator's license would justify the indiscriminate stop of every vehicle owned by an individual with a suspended license. The Fourth Amendment does not countenance such an intrusive violation of privacy."). While the cases cited by Glover demonstrate that intermediate courts of appeal of other states have held officers must rely on additional investigation to confirm a vehicle owner's identity prior to conducting a vehicle stop, we do not find those cases persuasive.

In sum, we agree with the consensus of state supreme courts that have considered this issue and hold that a law enforcement officer has reasonable suspicion to initiate a stop of a vehicle to investigate whether the driver has a valid driver's license if, when viewed in conjunction with all of the other information available to the officer at the time of the stop, the officer knows the registered owner of the vehicle has a suspended license and the officer is unaware of any other evidence or circumstances from which an inference could be drawn that the registered owner is not the driver of the vehicle. Here, the undisputed evidence establishes that Deputy Mehrer observed the pickup being driven on a public roadway. He determined the pickup to be registered to Glover, who had a suspended driver's license. There were no facts or circumstances suggesting that the owner was not the driver. Considering the totality of the information available to the officer at the time of the stop, we find it was reasonable for Mehrer to infer that the driver was the owner of the vehicle; in other words, there were specific and articulable facts from which the officer's common-sense inference gave rise to a reasonable suspicion that

the driver was committing a violation of K.S.A. 2016 Supp. 8-287. Therefore, Mehrer properly initiated a traffic stop to investigate whether Glover was driving his vehicle in violation of the law.

The district court's decision to grant Glover's motion to suppress the evidence is reversed, and the matter is remanded for further proceedings.