IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,446

STATE OF KANSAS,
*Appellant*,

v.

CHARLES GLOVER,
*Appellee*.

SYLLABUS BY THE COURT

1.

A routine traffic stop is a warrantless seizure under the Fourth Amendment to the United States Constitution and is therefore unreasonable unless the officer who initiates the stop has a reasonable and articulable suspicion, based on facts, that the person stopped has committed, is committing, or is about to commit a crime.

2.

Courts evaluate the existence of a reasonable suspicion under a totality-of-the-circumstances analysis that requires a case-by-case assessment.

3.

The State bears the burden to justify a warrantless seizure, and it must do so with actual evidence. In determining whether the State has met its burden, a court cannot draw inferences in favor of the State from a lack of evidence in the record. Doing so impermissibly relieves the State of its burden.

4.

An officer cannot begin a traffic stop to investigate whether the driver of a vehicle has a valid license based solely on the fact the vehicle's registered owner has a suspended or revoked driver's license. The officer must be able to point to specific and articulable facts from which the officer can rationally infer that the driver of the vehicle—not just the registered owner—has a suspended driver's license.

Review of the judgment of the Court of Appeals in 54 Kan. App. 2d 377, 400 P.3d 182 (2017). Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed July 27, 2018. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Andrew Bauch,* assistant district attorney, argued the cause, and *John Grobmyer*, legal intern, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellant.

*Elbridge Griffy IV*, of Lawrence*,* argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  The United States Supreme Court has determined that the Fourth Amendment to the United States Constitution allows a law enforcement officer to initiate a traffic stop only when the officer has an articulable and reasonable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime. Here, the officer stopped a vehicle simply because he assumed the driver was the registered owner, whose driver's license had been revoked. The officer had no information to support the assumption that the owner was the driver.

The driver moved to suppress evidence obtained during the stop, arguing the officer did not have reasonable suspicion of illegal activity when he stopped the car. The

2

district court agreed, finding unreasonable the officer's assumption that the car's driver was the registered owner. The State appealed that ruling, and the Court of Appeals reversed. *State v. Glover*, 54 Kan. App. 2d 377, 400 P.3d 182 (2017). On review of that decision, we reverse the Court of Appeals and affirm the district court. We hold the officer lacked an articulable and reasonable suspicion that the unidentified driver did not have a valid driver's license; the officer's assumption was only a hunch and was unsupported by a particularized and objective belief.

FACTS AND PROCEDURAL HISTORY

While on routine patrol, Douglas County Sheriff's Deputy Mark Mehrer observed a 1995 Chevrolet pickup truck and ran the truck's license plate number through the Kansas Department of Revenue's database. Deputy Mehrer learned Charles Glover, Jr., had registered the vehicle and Glover's Kansas driver's license had been revoked. Deputy Mehrer did not observe any traffic violations but initiated a traffic stop based on his assumption that Glover was driving the vehicle. He did not try to confirm the identity of the driver before initiating the traffic stop.

The State charged Glover with driving as a habitual violator. He filed a motion to suppress evidence, arguing the officer lacked reasonable suspicion to initiate the traffic stop. The parties entered into the following stipulation of facts on which the district court decided the motion:

"1.     Deputy Mark Mehrer is a certified law enforcement officer employed by the Douglas County[,] Kansas Sheriff's Office.

"2.     On April 28, 2016, Deputy Mehrer was on routine patrol in Douglas County when he observed a 1995 Chevrolet 1500 pickup truck with Kansas plate 295ATJ.

3

"3.     Deputy Mehrer ran Kansas plate 295ATJ through the Kansas Department of Revenue's file service. The registration came back to a 1995 Chevrolet 1500 pickup truck.

"4.     Kansas Department of Revenue files indicated the truck was registered to Charles Glover Jr. The files also indicated that Mr. Glover had a revoked driver's license in the State of Kansas.

"5.     Deputy Mehrer assumed the registered owner of the truck was also the driver, Charles Glover Jr.

"6.     Deputy Mehrer did not observe any traffic violations, and did not attempt to identify the driver [of] the truck. Based solely on the information that the registered owner of the truck was revoked, Deputy Mehrer initiated a traffic stop.

"7.     The driver of the truck was identified as the defendant, Charles Glover Jr."

The district court granted Glover's suppression motion, finding it was not "reasonable for an officer to infer that the registered owner of a vehicle is also the driver of the vehicle absent any information to the contrary." The district court judge relied on personal experience, stating she has "three cars registered in [her] name. [Her] husband drives one every day; [her] daughter [is] in [Washington D.C.] with one every day, and [she] drive[s] the other." The judge believed her situation was much like many other families.

The State filed an interlocutory appeal. The Court of Appeals reversed, holding:

"a law enforcement officer has reasonable suspicion to initiate a stop of a vehicle to investigate whether the driver has a valid driver's license if, when viewed in conjunction with all of the other information available to the officer at the time of the stop, the officer knows the registered owner of the vehicle has a suspended license and the officer is

4

unaware of any other evidence or circumstances from which an inference could be drawn that the registered owner is not the driver of the vehicle." *Glover*, 54 Kan. App. 2d at 385.

We granted Glover's petition for review. Our jurisdiction arises under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

Glover correctly notes the State bears the burden of proving the lawfulness of a warrantless seizure. See *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009). And he argues the Court of Appeals' owner-is-the-driver presumption impermissibly relieves the State of its burden of proof and shifts the burden to the driver. He argues that without the presumption the State did not sustain its burden to justify the traffic stop—a warrantless seizure—because the stipulation of facts showed no attempt by the officer to identify the driver or otherwise obtain corroborating information to show he was driving. We essentially agree with Glover's arguments. To explain that conclusion, we begin with some general principles about reasonable searches and seizures.

The Fourth Amendment requires law enforcement officers who seize an individual or who conduct a search to have either a warrant or a basis for relying on one of the specific and well-recognized exceptions to the warrant requirement. *Riley v. California*, 573 U.S. ___, ___, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014); *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). One exception allows an officer to stop and briefly detain an individual without a warrant when the officer has an articulable and reasonable suspicion, based in fact, that the detained person is committing, has committed, or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985). A warrantless traffic stop can fall within this exception if the officer has reasonable

5

suspicion of a traffic violation or other criminal activity. See *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008).

To have reasonable suspicion to detain an individual, "[a] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. The suspicion must have "'a particularized and objective basis'" and be something more than "an unparticularized suspicion or hunch." *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 [1996], and citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d [1989]). Although the United States Supreme Court has recognized that "the concept of reasonable suspicion is somewhat abstract," it has "deliberately avoided reducing it to '"a neat set of legal rules."'" *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).

The United States Supreme Court applied these principles in the context of a case in which a law enforcement officer initiated a traffic stop to check the driver's license and registration. The officer did not know who was driving and had not observed any traffic violations before the stop. The Court held:  "[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed[,] . . . stopping an automobile and detaining the driver in order to check his driver's license . . . [is] unreasonable under the Fourth Amendment." *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979).

In essence, according to the district court, that is what Deputy Mehrer did. Thus, the district court granted Glover's motion to suppress. Generally, to review such a conclusion, an appellate court would review the district court's ruling on a suppression motion to determine whether the district court's factual findings are supported by

substantial competent evidence and would review the ultimate legal conclusion drawn from those factual findings de novo. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016). But when, as here, the parties submit the case to the district court on stipulated facts, appellate courts need determine only the question of law of whether the district court should have suppressed the evidence. This presents an issue subject to unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

Here, the stipulated facts are somewhat distinguishable from *Prouse*. Deputy Mehrer knew the vehicle was properly registered in Glover's name but was also aware Glover did not possess a valid license. Deputy Mehrer did not know whether Glover was driving but "assumed the registered owner of the truck was also the driver, Charles Glover Jr." In other words, Deputy Mehrer had some suspicion of a specific crime— driving while revoked. But Deputy Mehrer, who had not observed a traffic violation, needed *reasonable* suspicion Glover was driving, not just *some* suspicion. See *Prouse*, 440 U.S. at 663; *Smith*, 286 Kan. at 407.

Deputy Mehrer did not seek to confirm the identity of the driver, and the stipulation provides no additional facts supporting an inference that Glover was driving. Under these limited facts, the district court had to determine whether spotting a vehicle owned by an unlicensed driver provides reasonable suspicion that an unlicensed motorist is driving the car. Under the totality of the circumstances, we note that a person with a revoked driver's license commits no crime by simply owning and registering a vehicle. Nor does that person commit a crime by allowing another licensed driver to use the registered vehicle. The crime occurs if an unlicensed driver operates the vehicle, making the determinative question whether *the driver* of the vehicle, not its *owner*, has a revoked license.

The State asserts, and the Court of Appeals held, reasonable suspicion can arise because an officer may presume the owner is the driver absent contrary information. We find this presumption legally erroneous for two reasons. First, the owner-is-the-driver presumption implicitly requires applying and stacking unstated assumptions that are unreasonable without further factual basis. Second, the presumption rests, in part, on what the officer *does not* know. And in evaluating whether the State has met its burden to prove the lawfulness of a search or seizure, courts cannot "draw inferences from the lack of evidence in the record" because doing so may relieve the State of its burden and shift the burden to the defendant to establish why reasonable suspicion did not exist. *Porting*, 281 Kan. at 327-28. To explain, we will discuss in more detail the reasons we reject the Court of Appeals holding.

*Applying and Stacking Assumptions*

Here, the parties presented narrow, stipulated facts. One of those stipulations stated:  "Deputy Mehrer *assumed* the registered owner of the truck was also the driver, Charles Glover Jr." (Emphasis added.) Notably, the stipulation did not speak of an inference. And, as our discussion will show, assumed is an accurate word for what Deputy Mehrer did here. A distinction exists between an assumption and an inference, and this distinction is especially significant in the context of determining whether an officer had reasonable suspicion. See *Terry*, 392 U.S. at 21 (reasonable suspicion requires specific and articulable facts from which rational inferences can be drawn); *DeMarco*, 263 Kan. at 735 (citing *Sokolow*, 490 U.S. at 7, for the principle that an officer cannot rely on an "unparticularized suspicion or hunch").

According to a dictionary published about the time of the United States Supreme Court's decision in *Terry*, an assumption is "[a] statement accepted or supposed true without proof or demonstration." American Heritage Dictionary, 80 (1969). In contrast,

an inference is "[s]omething inferred; a conclusion based on a premise," and to infer is "[t]o conclude from evidence; deduce" or "[t]o have as a logical consequence." American Heritage, 673. This means, by definition, a true inference fits with the *Terry* standard—it is a conclusion or deduction based on an evidentiary premise, i.e., specific and articulable facts. See *Terry*, 392 U.S. at 21; American Heritage, 673. An assumption has no basis in proof or demonstration, so it is only an inarticulate hunch or an unparticularized suspicion. See American Heritage, 80. Accordingly, an assumption will not satisfy reasonable suspicion under the *Terry* standard. See *DeMarco*, 263 Kan. at 735.

Here, the panel overlooked the assumption and held:

> "[A] law enforcement officer has reasonable suspicion to initiate a stop . . . if, when viewed in conjunction with all of the other information available to the officer at the time of the stop, the officer knows the registered owner of the vehicle has a suspended license and the officer is unaware of any other evidence or circumstances from which an inference could be drawn that the registered owner is not the driver of the vehicle." *Glover*, 54 Kan. App. 2d at 385.

Although the panel used the phrase "when viewed in conjunction with all of the other information available to the officer at the time of the stop," Deputy Mehrer had no information beyond the fact that Glover, the registered owner, had a revoked driver's license. For example, Deputy Mehrer did not have personal knowledge of Glover or his driving habits. See *Glover*, 54 Kan. App. 2d at 385. Given the lack of other evidence, to accept the owner-is-the-driver presumption as valid, the panel necessarily had to accept two unstated assumptions.

First, it had to assume the registered owner was likely the primary driver of the vehicle. As the district court stated, however, common experience in Kansas communities suggests families may have several drivers sharing vehicles legally registered in the

9

names of only one or two of the family members. See *Ornelas*, 517 U.S. at 695 ("Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, nontechnical conceptions that deal with '"the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act."'"). Unless the officer is familiar with the registered owner and his or her driving habits or has another factual foundation, the officer can only *assume*, not infer, the owner is the driver. And an assumption does not satisfy the *Terry* standard. See *DeMarco*, 263 Kan. at 735.

Even if, for the sake of argument, we accept that it is reasonable to believe the registered owner is likely the primary driver of a vehicle, we cannot accept the owner-is-the-driver presumption because it ultimately turns on the second assumption that the owner will likely disregard the suspension or revocation order and continue to drive. This assumption is flawed because it presumes a broad and general criminal inclination on the part of suspended drivers. Yet officers cannot assume criminal conduct is taking place and detain someone without "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. The clear implication of *Terry* is that absent specific and articulable facts rationally suggesting criminal activity, officers and courts should presume that citizens are engaged in lawful activities and have a right to remain free from police interference. In this way, this case varies from *State v. Hamic*, 35 Kan. App. 2d 202, 129 P.3d 114 (2006), a case cited by the State and relied on by the panel.

In *Hamic*, before initiating a traffic stop, the officer remembered his prior contact with the vehicle owner. He knew she had been stopped twice in the previous two months for driving while suspended—once by him and once by another officer. Thus, the facts established the unlicensed owner drove the vehicle and had repeatedly disregarded her

10

suspension order. In other words, the officer had specific and articulable facts to *infer* the owner was likely driving the vehicle in violation of her suspension order.

In contrast, Deputy Mehrer merely assumed Glover was driving while revoked. He did not corroborate the identity of the driver and had no knowledge of Glover having previously disregarded the revocation order. Without this information (or other facts), Deputy Mehrer should have presumed Glover was obeying the revocation order and was therefore not the driver. See *Prouse*, 440 U.S. at 663; *Terry*, 392 U.S. at 21. The fact Glover's vehicle was being driven was not readily indicative of a crime because Glover could legally allow another licensed driver to operate his vehicle. Without further factual support, it was not reasonable for Deputy Mehrer to believe Glover was disregarding the revocation order simply because his vehicle was being driven.

Even if we were to accept the two assumptions as valid inferences, the State's theory requires one assumption to be stacked on another. The assumption that an unlicensed driver is likely to continue driving supports the presumption that it is the registered owner who is driving the vehicle. Kansas law does not allow this type of inference stacking. As we held in *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017): "Where the State relies on such inference stacking, i.e., where the State asks the jury to make a presumption based upon other presumptions, it has not carried its burden to present sufficient evidence." The same logic applies when an officer must state facts to support an articulable and reasonable suspicion.

In summary, we explicitly reject the owner-is-the-driver presumption because it assumes the registered owner is likely disregarding his or her suspension or revocation order based on only the *general* fact his or her vehicle is being driven. Yet the determinative question is not the status of the registered owner's license; it is the status of the *actual* driver's license. Thus, we find the officer must have *specific and articulable*

11

facts suggesting the owner is driving the vehicle or is otherwise likely to violate the suspension order based on other corroborating information, such as the officer's prior encounters in *Hamic*. See *Prouse*, 440 U.S. at 663; *Terry*, 392 U.S. at 21.

*Impermissible burden shifting*

The owner-is-the-driver presumption is also invalid because it relieves the State of its burden by eliminating the officer's need to develop specific and articulable facts to satisfy the State's burden on the determinative issue of whether the registered owner is driving the vehicle, not whether the vehicle is being driven. By creating a bright-line rule, the State no longer has to prove the officer had particular and individualized suspicion that the registered owner was *driving* the vehicle. Instead, in a sense, the rule motivates officers to avoid confirming the identity of the driver because learning facts that suggest the registered owner is not driving undermines reasonable suspicion. Such an application is far afield from the reasonableness requirements of *Terry* and its progeny.

As we already discussed, the underlying assumptions are a necessary component of the presumption. But without appropriate factual foundation, they are only that— assumptions akin to unparticularized suspicions or inarticulate hunches and thus invalid for purposes of reasonable suspicion. The owner-is-the-driver presumption is a form of judicial gap-filling where courts use a lack of contrary evidence to convert an assumption to an inference. This is a result we cannot accept because an assumption is something without basis in fact or proof. A lack of proof to the contrary does not prove something that lacked proof to begin with. Simply put, absence of evidence is not evidence of absence.

This court has repeatedly held the State has the burden to justify a warrantless seizure. See *Morlock*, 289 Kan. at 985. In determining whether the State has met its

12

burden, "[i]t [is] improper [for a court] to draw inferences from the lack of evidence in the record." *Porting*, 281 Kan. at 328. In *Porting*, we held an inference based on a lack of evidence improperly relieves the State of its burden of proof and shifts it to the defendant to disprove the inference. 281 Kan. at 327-28.

*Porting* dealt with a warrantless search of a home based on the third-party consent of a parolee, Eugene Hanson, who had just been released from an 18-month prison sentence. Before his imprisonment, he and his former girlfriend, Sandra Porting, resided in his mother's home. Porting continued to live with Hanson's mother while he served his prison sentence. After he was released but before going to his mother's home, Hanson asked a parole officer to sweep the house for drugs because he had heard rumors Porting was using drugs in the house. The parole officer accompanied Hanson to the home, and Hanson gave the officer permission to search. Although Hanson's mother was present, the officer did not request her additional consent. During the search, the officer found methamphetamine and drug paraphernalia in the home and in Porting's pockets.

Porting moved to suppress, arguing Hanson lacked authority to consent to the search. The trial court denied her motion, finding Hanson had authority because he was a resident of the home based on his physical presence and intent to remain there permanently. On appeal, Porting argued that although Hanson was a former and prospective resident of the home, he was not a resident at the time of the search. The Court of Appeals found Hanson had authority to consent based on a *lack* of evidence that he had permanently surrendered control of the residence, his mother had restricted his access, or he was otherwise not welcome. See *State v. Porting*, 34 Kan. App. 2d 211, 214-15, 116 P.3d 728 (2005). This court reversed, holding the facts did not show Hanson had authority and the inferences drawn from a lack of evidence in the record impermissibly shifted the burden of proof to Porting. See *Porting*, 281 Kan. at 326-28.

13

The Court of Appeals' reasoning here is highly analogous to its reasoning in *Porting*. An inference is being drawn that Glover was the driver based on a lack of evidence that he was not. See *Glover*, 54 Kan. App. 2d at 385. And while *Porting* related to a warrantless search and this case involves a warrantless seizure, the State has the burden of proof to justify both. See *Morlock*, 289 Kan. at 985; *Porting*, 281 Kan. at 324; *DeMarco*, 263 Kan. at 732. In both cases, the inferences drawn based on a lack of evidence constitute improper burden shifting. See *Porting*, 281 Kan. at 327-28.

While these reasons cause us to reject the panel's position, we note that the panel supported its holding by citing several out-of-state decisions. See *Glover*, 54 Kan. App. 2d at 382-83 (citing *Armfield v. State*, 918 N.E.2d 316, 321-22 [Ind. 2009]; *State v. Vance*, 790 N.W.2d 775, 781 [Iowa 2010]; *State v. Tozier*, 905 A.2d 836, 839 [Maine 2006]; *State v. Pike*, 551 N.W.2d 919, 922 [Minn. 1996]); *State v. Neil*, 350 Mont. 268, 271, 207 P.3d 296 [2009]; *State v. Richter*, 145 N.H. 640, 641-42, 765 A.2d 687 [2000];. *State v. Edmonds*, 192 Vt. 400, 404, 58 A.3d 961 [2012]). In our reading of these decisions, none of them discuss the underlying assumptions that the district court needed to make here nor do they discuss the problems with inference stacking or with the lack of evidence being produced by the State. Nor do those decisions justify the reasonableness of the assumptions.

Instead, many of the decisions rest on the conclusion that common sense tells us that a registered owner is the primary driver of all vehicles registered in his or her name. But as the district court indicated, common experience suggests otherwise. And, as we have discussed, even if we accept that assumption, common sense does not say that someone who cannot legally drive will continue to do so. We cannot assume someone is breaking the law. Finally, we note that some decisions rest on public policy. But we cannot set aside principles of Kansas law simply because valid policy reasons exist for a

14

course of conduct. As a result, we find these decisions unpersuasive, at least as applied to this case.

CONCLUSION

We reject the Court of Appeals' bright-line, owner-is-the-driver presumption because reasonable suspicion must be based on specific and articulable facts from which rational inferences can be drawn that the detained individual is committing, has committed, or is about to commit a crime. The State has the burden to prove the officer had reasonable suspicion, and this burden cannot be shifted to the defendant. When a court draws inferences in favor of the State based on a lack of evidence in the record, it impermissibly relieves the State of its burden.

To be clear, reasonable suspicion is a low burden. The State does not need overwhelming evidence to satisfy its burden, but it must affirmatively produce evidence showing the officer rationally inferred criminal activity based on specific and articulable facts. See *Terry*, 392 U.S. at 21; *Morlock*, 289 Kan. at 985; *Porting*, 281 Kan. at 327-28. Here, the problem is not that the State necessarily needs significantly more evidence; it needs *some* more evidence. What more is required turns on the totality of the circumstances, which courts must determine case by case. See *DeMarco*, 263 Kan. at 734-35. In plain terms, it does not matter if the evidentiary gap is an inch or a mile; if the State has the burden to fill it, it must do so *with evidence*. A court cannot engage in judicial gap-filling based on a *lack* of evidence. See *Porting*, 281 Kan. at 327-28.

Today, we decline to delineate the type of corroborating evidence that will satisfy the State's burden. We cannot imagine all the ways the gap could be filled. But we recognize that in other cases, the State, by presenting some more evidence, may meet its burden.

15

But the State did not present any such evidence here, so the question of what evidence is necessary is not before us. Also, we stress that the reasonable suspicion analysis is not amenable to checklists. Courts must determine the quantity and quality of the evidence supporting an officer's actions on a case-by-case basis under a totality-of-the-circumstances analysis. See *DeMarco*, 263 Kan. at 734-35. "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result [the United States Supreme] Court has consistently refused to sanction." *Terry*, 392 U.S. at 22.

The judgment of the Court of Appeals is reversed. The judgment of the district court is affirmed.