Gardner, J., dissenting:
I respectfully dissent. Neither the facts nor the law suggests that Sergio Angel Arrizabalaga's detention for 24 minutes based on the trooper's reasonable suspicion of a crime was unreasonable.
The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language and provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." See State v. Neighbors , 299 Kan. 234, 239, 328 P.3d 1081 (2014).
A traffic stop is a seizure of the driver. To comply with the Fourth Amendment, the officer conducting the stop must have reasonable and articulable suspicion that the driver has committed, is committing, or is about to commit a crime. See K.S.A. 22-2402(1) ; Terry v. Ohio , 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The reasonableness of an investigative detention involves a two-part test: (1) whether the trooper's stop was justified at its inception, and (2) whether the trooper's actions during the detention were reasonably related in scope to the circumstances justifying the initial interference. State v. Mitchell , 265 Kan. 238, 241, 960 P.2d 200 (1998). For a seizure to be constitutional, the trooper must have specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction. State v. Jones , 300 Kan. 630, 637, 333 P.3d 886 (2014). The trooper here had that, as a traffic infraction provides an objectively valid reason to make a traffic stop. 300 Kan. at 637, 333 P.3d 886. The parties here do not challenge the initial stop. Nor do they challenge the scope (the intrusiveness) of the stop except for its length.
It is well established that an officer may detain a driver for questioning unrelated to the initial stop if the officer has a reasonable suspicion that illegal activity has occurred or is occurring. State v. DeMarco , 263 Kan. 727, 734, 952 P.2d 1276 (1998) ; United States v. Soto , 988 F.2d 1548, 1554 (10th Cir. 1993). Reasonable suspicion is " ' "a particularized and objective basis" for suspecting the person stopped of criminal activity.' " 263 Kan. at 735, 952 P.2d 1276. "Something more than an unparticularized suspicion or hunch must be articulated." 263 Kan. at 735, 952 P.2d 1276. Reasonable suspicion represents a minimum level of objective justification and is a lower standard than probable cause. City of Atwood v. Pianalto , 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). In fact, reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence."
*404 United States v. Sokolow , 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).
The trooper here had reasonable suspicion to detain Arrizabalaga for questioning unrelated to the initial stop based on his reasonable suspicion that illegal activity was occurring under his nose. In fact, the district court held that "when the defendant withdrew his consent to search the van, there was objectively reasonable suspicion ... to extend the detention for the dog sniff." No one challenges that conclusion. So Rodriguez v. United States , 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), which held police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, to conduct a dog sniff, is not relevant here. Instead, the sole issue is whether, given the trooper's reasonable suspicion, the length of Arrizabalaga's detention while awaiting the drug dog's arrival was reasonable. "Whether the length of detention is reasonable is a question of law over which this court has unlimited review." State v. Moore , 39 Kan. App. 2d 568, 578, 181 P.3d 1258 (2008).
Kansas cases have rarely examined whether the length of a detention supported by reasonable suspicion is unreasonable. See State v. Trammell , No. 106511, 2013 WL 3155786 (Kan. App. 2013) (finding a "lengthy" detention not excessive where no evidence contradicted the trial court's finding that the police acted with diligence as the situation developed). I find no Kansas case examining the permitted length of a detention, justified by reasonable suspicion, after the conclusion of a traffic stop to get a drug dog on site. But federal cases in the Tenth Circuit have often done so. The Kansas Supreme Court routinely relies on federal cases in determining Fourth Amendment law. See, e.g., State v. Schooler , 308 Kan. 333, 351, 419 P.3d 1164 (2018) ; State v. Glover , 308 Kan. 590, 422 P.3d 64 (2018), cert. granted --- U.S. ----, 139 S. Ct. 1445, 203 L.Ed.2d 680 (2019) ; State v. Bannon , 306 Kan. 886, 893, 398 P.3d 846 (2017). I do the same.
So how long is too long? As the United States Supreme Court has found, there is no fixed time limit in determining whether a detention is too long to be justified as an investigative stop. United States v. Sharpe , 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (rejecting any per se rule that a 20-minute detention is too long to be justified under the Terry doctrine):
"Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on Terry stops. ... Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.
"We sought to make this clear in Michigan v. Summers, supra :
'If the purpose underlying a Terry stop-investigating possible criminal activity-is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in Terry and Adams [v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) ].' 452 U.S. at 700, n. 12 [101 S.Ct. 2587].
Later, in Place , [462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) ], we expressly rejected the suggestion that we adopt a hard-and-fast time limit for a permissible Terry stop:
'We understand the desirability of providing law enforcement authorities with a clear rule to guide their conduct. Nevertheless, we question the wisdom of a rigid time limitation. Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation.' 462 U.S. at 709, n. 10 [103 S.Ct. 2637]." Sharpe , 470 U.S. at 685-86, 105 S.Ct. 1568.
An investigative stop must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer , 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). "The length of detention is generally measured from the time of seizure to the time probable cause is established." United States v. Moore , 22 F.3d 241, 247 (10th Cir. 1994). Here, that length was 24 minutes. But the length of time itself is not dispositive.
*405 The permissibility of an investigative detention normally depends on the length of the detention coupled with the diligence of the police in pursuing the investigation. See Sharpe, 470 U.S. at 685, 105 S.Ct. 1568 ; United States v. Place , 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) ; United States v. Scales , 903 F.2d 765, 769 (10th Cir. 1990). This length-plus-diligence test controls here. In this test, the officer's diligence is a weightier factor than the length of the detention.
Whether a detention was too long to be justified as an investigative stop turns not so much on the length of the detention as it does on whether the police diligently pursued means of investigation likely to confirm or dispel their suspicions quickly under the circumstances. United States v. Soto-Cervantes , 138 F.3d 1319, 1323-24 (10th Cir. 1998) ; see United States v. McCarthy , 77 F.3d 522, 529-31 (1st Cir. 1996) (75-minute stop reasonable); United States v. Vega , 72 F.3d 507, 515-16 (7th Cir. 1995) (62-minute stop reasonable); United States v. Bloomfield , 40 F.3d 910, 917 (8th Cir. 1994) (one-hour stop reasonable); United States v. Rutherford , 824 F.2d 831, 834-35 (10th Cir. 1987) (one-hour stop reasonable); United States v. Acosta-Chavez , No. 97-3288, 1998 WL 421822 (10th Cir. 1998) (unpublished opinion) (finding troopers did not act diligently in investigating their suspicion of car theft but did act diligently in investigating their suspicions that defendant was transporting drugs).
Diligence has been described as pursuing a means of investigation that will quickly confirm or dispel an officer's suspicions. See United States v. Kopp , 45 F.3d 1450, 1454 n.1 (10th Cir. 1995). In considering this factor, the Supreme Court has "emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." Sharpe , 470 U.S. at 685, 105 S.Ct. 1568. The Supreme Court summarized the relevant principles in this way:
"In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable.' The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it. [Citations omitted.]" Sharpe , 470 U.S. at 686-87, 105 S.Ct. 1568.
Yet the majority finds it sufficient that some other alternative was available-the trooper could have called for a drug dog during the traffic stop. But the controlling question is, instead, whether the trooper acted unreasonably in not doing so. Sharpe , 470 U.S. at 686-87, 105 S.Ct. 1568. A review of relevant cases convinces me he did not. Our federal counterparts often find detentions longer than 24 minutes to be reasonable, and officers often wait until a traffic stop is concluded to call for a drug dog based on reasonable suspicion formed during the traffic stop. See, e.g., United States v. Rosborough , 366 F.3d 1145, 1147-51 (10th Cir. 2004) (25-minute delay reasonable); United States v. Villa-Chaparro , 115 F.3d 797, 802-03 (10th Cir. 1997) (38-minute delay reasonable); United States v. Kopp , 45 F.3d 1450, 1454 (10th Cir. 1995) (30-minute delay reasonable); United States v. Garcia , 52 F. Supp. 2d 1239, 1252 (D. Kan. 1999) (40-minute delay reasonable); United States v. Chavira , No. 05-40010-01-JAR, 2005 WL 1213670, at *7 (D. Kan. 2005) (unpublished opinion), aff'd 467 F.3d 1286 (10th Cir. 2006) (finding detention reasonable where trooper was diligent in procuring the dog as soon as possible under all the circumstances after driver consented, then withdrew consent to a search, then the trooper called for a drug dog 25 miles away);
*406 United States v. Douglas , 195 Fed. Appx. 780, 785-86 (10th Cir. 2006) (unpublished opinion) (finding a 30-minute delay to await the arrival of the drug dog reasonable). This 24-minute detention was thus not unreasonably long.
So the focus here is on the trooper's diligence. The diligence requirement had its genesis in Place . There, law enforcement agents stopped defendant after his arrival in an airport and seized his luggage for 90 minutes to take it to a narcotics detection dog for a "sniff test." The Court decided that an investigative seizure of personal property could be justified under the Terry doctrine, but that "[t]he length of the detention of respondent's luggage alone precludes the conclusion that the seizure was reasonable in the absence of probable cause." 462 U.S. at 709, 103 S.Ct. 2637. But there, agents knew in advance what time Place was scheduled to arrive at the airport. They had ample time to arrange for additional investigation at that location and thus could have minimized the intrusion on Place's Fourth Amendment interests. 462 U.S. at 708-10, 103 S.Ct. 2637. So "the rationale underlying [Place 's] conclusion was premised on the fact that the police knew of respondent's arrival time for several hours beforehand, and the Court assumed that the police could have arranged for a trained narcotics dog in advance and thus avoided the necessity of holding respondent's luggage for 90 minutes." Sharpe , 470 U.S. at 685, 105 S.Ct. 1568. But Arrizabalaga has shown no similar lack of diligence here. Unlike in Place , no facts show that the trooper had any reason to know that he would need a drug dog before he stopped Arrizabalaga.
Nor did this trooper have any need to call a drug dog during the traffic stop. The trooper acted diligently during the traffic stop by taking acts related to the reason for his initial stop, which Arrizabalaga does not challenge. Those acts were directly related to his "mission," which typically includes ordinary inquiries to check the driver's license, determine whether there the driver has outstanding warrants, inspect the vehicle's registration and proof of insurance, and issue a warning or citation. See Schooler , 308 Kan. at 345-46, 419 P.3d 1164. He had to be careful not to prolong the traffic stop by asking questions not directly related to that mission. State v. Jimenez , 308 Kan. 315, 328, 420 P.3d 464 (2018). So he was not permitted to prolong the traffic stop by asking any questions about Arrizabalaga's criminal acts even though he reasonably suspected them. State v. Lewis , 54 Kan. App. 2d 263, 271, 399 P.3d 250 (2017).
Even after the traffic stop concluded the trooper had no need to call a drug dog. The trooper terminated the traffic stop by giving Arrizabalaga a warning, returning his driver's license, and telling him "that's all I got for you." He then began a voluntary encounter with Arrizabalaga, who started to get out of the car-the trooper asked Arrizabalaga if he would consent to answer more questions. See State v. Thompson , 284 Kan. 763, 812, 166 P.3d 1015 (2007) (finding voluntary encounter where officer's conduct conveys to a reasonable person that he was free to refuse the officers' requests or otherwise terminate the encounter). Arrizabalaga did consent, and the trooper began asking him questions. Because he had consent, the trooper had no need to call a drug dog.
This diligent course of conduct was legal since the trooper had both consent and reasonable suspicion. See Jimenez , 308 Kan. at 331, 420 P.3d 464 (finding when " 'a traffic stop is extended in time beyond the period that the officers are completing tasks related to the traffic infractions, the officers must either obtain consent from the individuals detained or identify reasonable suspicion of criminal activity to support the extension of the stop,' " quoting United States v. Hill , 852 F.3d 377, 381 [4th Cir. 2017] ); DeMarco , 263 Kan. at 734, 952 P.2d 1276 (holding further questioning is permissible if [1] " 'the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning,' [citation omitted], or [2] during the traffic stop the trooper gains a reasonable and articulable suspicion that the driver is engaged in illegal activity"). Arrizabalaga does not challenge the voluntariness of this encounter.
By asking Arrizabalaga questions including his travel plans and criminal history, the *407 trooper diligently acted on his reasonable suspicion that the van was carrying illegal drugs. Asking Arrizabalaga if he would consent to answer more questions was a less intrusive means of pursuing the trooper's reasonable suspicions than making Arrizabalaga wait for a drug dog. Arrizabalaga told the trooper he had received a citation for marijuana but had never been arrested. But that statement was inconsistent with other information known to the trooper. Dispatch had told the trooper that Arrizabalaga had been charged with producing marijuana and had a felony conviction related to a stolen vehicle.
So the trooper asked Arrizabalaga if he could search his van, and Arrizabalaga consented to the search. That, too, is uncontested. Because the trooper had consent to search the van he had no need to call a drug dog. After Arrizabalaga gave consent, he and the trooper returned to the van and the trooper asked the passenger to get out. The trooper told Arrizabalaga that he had reasonable suspicion but not probable cause to search the van. Arrizabalaga asked the trooper if he had a search warrant, and the trooper responded that Arrizabalaga had consented. The trooper then told Arrizabalaga and his passenger that he was looking for large amounts of drugs and any personal use amounts would "go into the ditch." Arrizabalaga then revoked his consent to search the van. Thus ended the consensual encounter.
And the detention began. Only when Arrizabalaga withdrew his consent for the trooper to search the van did the need to call a drug dog arise. As soon as Arrizabalaga withdrew his consent to search, the trooper detained Arrizabalaga and swiftly called for a drug dog. But it was after 10 p.m., the parties were not in an urban area, and the closest trooper with a drug dog was not nearby. The closest drug dog available arrived 24 minutes after the detention began.
The majority holds that the trooper lacked diligence because he did nothing during the 24 minutes it took for the drug dog to arrive, after the traffic stop concluded. But it fails to state what more the trooper could have legally done during that time to confirm or dispel his suspicion that Arrizabalaga was transporting drugs in the van. The trooper had no warrant or probable cause so he could not search the van or arrest Arrizabalaga. He had detained Arrizabalaga and could have interrogated him but only at the risk of being accused of a Miranda violation (triggered by custodial interrogation). See, e.g., State v. Regelman , 309 Kan. 52, 60, 430 P.3d 946 (2018) (finding detention turned into a custodial interrogation requiring Miranda warnings).
And the trooper could do nothing to speed the arrival of the drug dog. So he waited. That seems reasonable to me. And to others. See United States v. $83,900.00 in U.S. Currency , 774 F. Supp. 1305, 1318 (D. Kan. 1991) (upholding a "lengthy" investigatory detention based on reasonable suspicion because the trooper had been diligent in calling the closest canine unit, which arrived one hour later, so the trooper "had no real choice but to wait").
Slowness is not equated to lack of diligence where, as here, the delay is caused by events not attributable to the officer. See, e.g., United States v. Shareef , 100 F.3d 1491, 1501-02 (10th Cir.1996) (finding 30-minute detention reasonable where police "computers used to verify license information were down or slow" and the driver was not carrying a license); United States v. Rutherford , 824 F.2d 831, 834 (10th Cir. 1987) (finding one-hour investigative stop before arrest reasonable when nearly one-half hour was because of problems with the police computer, and troopers had received tip that implicated defendant in drug trafficking, defendant failed to stop when signaled by police, and vehicle's license plate did not match its registration).
The majority finds that the trooper should have permitted Arrizabalaga to leave. But the trooper was not legally required to do so. In fact, doing so may have been unprofessional given the trooper's reasonable suspicion that Arrizabalaga was transporting drugs in his van. Officers need not perform their duties with a blind eye. Jimenez , 308 Kan. at 324, 420 P.3d 464. Nor should they be compelled by arbitrary time standards to ignore their reasonable suspicion of a crime committed in their presence. The trooper, having exhausted the less intrusive means of *408 pursuing his reasonable suspicion, acted diligently by detaining Arrizabalaga for no longer than was necessary to get a drug dog to the scene to quickly confirm or dispel his reasonable suspicions. See Sharpe , 470 U.S. at 686-88, 105 S.Ct. 1568 (upholding 20-minute detention where police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant").
The majority faults the trooper for not calling for a drug dog during the traffic stop because the trooper testified during the suppression hearing that he had formed reasonable suspicion then. But no authority suggests that the exercise of diligence requires an officer to call a drug dog as soon as the officer reasonably suspects that criminal activity is occurring, particularly where other factors, such as consent, show no need for a drug dog at the time. This is so even when the officer knows the closest dog is 78 miles away, as the Tenth Circuit held in United States v. Martin , 86 Fed. Appx. 364, 366 (10th Cir. 2003) (unpublished opinion). There, the officer conducted a traffic stop, returned Martin's documents, and gave him a warning. Martin then consented to answer additional questions, denied having any contraband in the vehicle, and refused to consent to a search. The officer then detained Martin for about an hour waiting for the arrival of the closest available dog handler and dog located about 78 miles away. Despite the hour wait and the 78-mile distance of the dog, the Tenth Circuit found the officer diligent and the detention reasonable:
"The colorable issue in this appeal is the approximately one-hour delay between Mr. Martin's detention and the arrival of the dog handler and his dog. But given the abundant reasonable suspicion in this case and the diligence by both the trooper and the handler to expedite the dog sniff, the delay was reasonable and not violative of the Fourth Amendment. See United States v. Place , 462 U.S. 696, 709-10, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) ('[I]n assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation.'); Williams , 271 F.3d at 1271 (upholding detention founded upon reasonable suspicion where 15 minutes elapsed from initial stop to arrival of dog); United States v. Villa-Chaparro , 115 F.3d 797, 802-03 (10th Cir. 1997) (upholding detention founded upon reasonable suspicion where 43 minutes elapsed from initial stop to arrival of dog); United States v. Rutherford , 824 F.2d 831, 833-34 (10th Cir. 1987) (upholding one-hour detention founded upon reasonable suspicion where 25-30 minute delay was caused by a computer problem)." Martin , 86 Fed. Appx. at 366.
The facts in Martin , as in other cases examining this issue, do not show that the officer did anything but sit in his or her patrol car while awaiting the dog's arrival.
By requiring the trooper to call for a drug dog the moment he first thought he had reasonable suspicion, the majority fails to recognize that the reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on an officer's subjective belief. Schooler , 308 Kan. at 351-52, 419 P.3d 1164. So the trooper's testimony about the time at which he formed reasonable suspicion is not controlling. Nor is his statement that if he could not find a dog, he would let Arrizabalaga leave. Instead, the detaining officer's subjective beliefs and intentions are irrelevant in assessing reasonableness of the officer's actions, as the Kansas Supreme Court recently clarified in Schooler .
Schooler asked whether an officer's telling the driver he was "good to go" was relevant in deciding if the officer had an objectively reasonable suspicion that the driver was engaged in criminal activity other than the traffic infraction:
"As to that, the answer is 'no' because our inquiry is limited to whether the facts the deputy knew supported further detention. United States v. Williams , 271 F.3d 1262, 1271 (10th Cir. 2001) (holding officer telling motorist he was free to leave did not affect determination of whether the officer had reasonable suspicion for later detention because '[a]lthough the record indicate[d] that the officer subjectively intended *409 that the [motorist] was free to go, the relevant inquiry ... is based on the objective facts known to the officer, not upon the officer's subjective state of mind'); see also United States v. McHugh , 639 F.3d 1250, 1258 (10th Cir. 2011) (rejecting argument that officer lacked reasonable suspicion to conduct Terry stop based on officer's admission that he had no reason at time of stop to think defendant had committed a crime, because '[t]he detaining officer's " 'subjective beliefs and intentions' are, quite simply, irrelevant" ' in assessing reasonableness of officer's actions); cf. Heien v. North Carolina , 574 U.S. 54, 135 S. Ct. 530, 539, 190 L. Ed. 2d 475 (2014) (holding reasonable suspicion may be based on officer's reasonable mistake of law, but mistake must be objectively reasonable, since courts do not examine officers' subjective understanding); Whren [v. U.S.] , 517 U.S. [806] at 812-13 [116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ] (foreclosing 'any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved'; noting the Court had 'never held, outside the context of inventory search or administrative inspection ... that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment'); State v. Johnson , 293 Kan. 1, 5, 259 P.3d 719 (2011) ('Seizures are generally permissible if " 'an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime.' " ')." Schooler , 308 Kan. at 351-52, 419 P.3d 1164.
The reasonable suspicion analysis requires a case-by-case evaluation based on the totality of the circumstances. State v. Lowery , 308 Kan. 359, 370, 420 P.3d 456 (2018). So determining whether reasonable suspicion supports a detention is no simple, formulaic task.
"The totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicious appearances. Instead, the court determines whether all the circumstances justify the detention.
' "The relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. [Citation omitted.] The totality of the circumstances standard precludes a 'divide-and-conquer analysis' under which factors that are 'readily susceptible to an innocent explanation are entitled to "no weight." [Citation omitted.]' " ' Sharp , 305 Kan. at 1081, 390 P.3d 542.
"At the same time, while the standard does not permit officers or the courts to selectively choose the facts that would establish reasonable suspicion, it recognizes events and conditions supporting reasonable suspicion are fluid rather than fixed, and the existence of reasonable suspicion may change once new facts are observed by or become known to law enforcement. Sharp , 305 Kan. at 1085 [390 P.3d 542]." Lowery , 308 Kan. at 366-67, 420 P.3d 456.
Because of the number, variety, and fluidity of factors involved in the reasonable suspicion analysis, it is not unusual for an officer to be convinced that reasonable suspicion exists, yet the court disagrees. See, e.g., Lowery , 308 Kan. at 370, 420 P.3d 456 (finding no reasonable suspicion to extend the stop when the driver was nervous, a minor discrepancy was shown between the driver's and passenger's accounts of the pair's travels, and the two were traveling in a rented car); State v. Messner , 55 Kan. App. 2d 630, 640, 419 P.3d 642 (2018) (finding no reasonable suspicion allowing a public safety stop to morph into an investigatory stop even though identified witness told officer that driver had appeared confused, that she believed driver was "meth'd out," and officer observed driver speaking and moving slowly); State v. Chapman , 23 Kan. App. 2d 999, 1011, 939 P.2d 950 (1997) (finding no reasonable suspicion to detain the defendant after the traffic stop was finished where officer noticed driver was extremely nervous, was breathing heavily, and avoided eye contact; driver was unable to name the owner of the car [allegedly his uncle]; officer noticed a hotel business card on the floorboard with a handwritten number on it; and officer noted the interior of the car had no luggage or other personal items).
*410 On occasion, even legal experts-our court and the Kansas Supreme Court-disagree whether the facts establish reasonable suspicion. Compare Schooler , 308 Kan. at 356, 419 P.3d 1164 (finding reasonable suspicion of criminal activity sufficient to justify detention of defendant for drug dog sniff), with State v. Schooler , No. 116636, 2017 WL 2212102 (Kan. App. 2017) (unpublished opinion) (finding no reasonable suspicion to extend the stop), rev'd 308 Kan. 333, 419 P.3d 1164. Compare State v. Glover , 308 Kan. 590, 422 P.3d 64 (finding officer lacked reasonable suspicion for traffic stop), with State v. Glover , 54 Kan. App. 2d 377, 400 P.3d 182 (2017) (finding an officer had reasonable suspicion based on those same facts), rev'd 308 Kan. 590, 422 P.3d 64 (2018), cert. granted --- U.S. ----, 139 S. Ct. 1445, 203 L.Ed.2d 680 (2019).
This trooper cannot be found lacking in diligence for not calling a drug dog the minute he first believed he might have reasonable suspicion given:
• the many and varying factors that contribute to that analysis;
• the ensuing legal uncertainty of that conclusion;
• the trooper's lack of need to call a dog earlier due to Arrizabalaga's consent; and
• the trooper's use of less intrusive means to pursue his suspicion before calling the dog.
The trooper was diligent in trying to get the dog as soon as possible given all the circumstances.
The majority engages in prohibited "post hoc evaluation of police conduct," imagining "some alternative means by which the objectives of the police might have been accomplished." Sharpe , 470 U.S. at 686-87, 105 S.Ct. 1568. Its decision effectively establishes a per se rule that a 24-minute detention to await the arrival of a drug dog is too long to be justified under the Terry doctrine. As in Sharpe , 470 U.S. at 684-86, 105 S.Ct. 1568, that result is "clearly and fundamentally at odds" with the correct Fourth Amendment analysis. Because Arrizabalaga's 24-minute detention was reasonable given the circumstances, I would reverse the district court's suppression of evidence.